CHRYSLER LEASING CORP. et al., Respondents-Appellants, v PUBLIC ADMINISTRATOR, NEW YORK COUNTY, as Administrator of the Estate of ADOLPHUS BENSON, Deceased, et al., Appellants-Respondents, et al., Defendant.

First Department, March 23, 1982

APPEARANCES OF COUNSEL

*Joseph F.X. Savona* of counsel (*John F. Scully* with him on the brief; *Griffin, Scully & Savona,* attorneys), for Federal Insurance Company, appellant-respondent.

*Marian Polovy* of counsel (*William F. Laffan, Jr.,* and *Irene Siegel* with her on the brief; *Evans, Orr, Pacelli, Norton & Laffan, P. C.,* attorneys), for American Motorists Insurance Company, appellant-respondent.

*Elinore B. Klein* of counsel (*Remo J. Acito* with her on the brief; *Acito & Klein, P. C.,* attorneys), for Public Administrator of New York County and others, appellants-respondents.

*Michael S. Belohlavek* of counsel (*Philip D. Pakula* with him on the brief; *Townely & Updike,* attorneys), for respondents-appellants.

*Howard McGratty* for Employers Surplus Insurance Company, defendant.

## OPINION OF THE COURT

SANDLER, J.

On July 8, 1966, acting under the instructions of his employer Herbert Siegel, who was an executive of the Baldwin-Montrose Chemical Co. (Baldwin-Montrose), Adolphus Benson picked up a vehicle from Avis Rent-A-Car (Avis), charging the rental to Siegel's corporate credit card.

Paragraph 5 of the rental agreement, on the reverse side, sets forth that the renter and any authorized operator participates as an insured in the benefits of an automobile liability insurance policy, a copy of which was available for inspection at the headquarters offices of the lessor; that the policy provides coverage for bodily injury or death liability with limits of $100,000 for each person and a total of $300,000 for each accident; and that the renter is bound by and agrees to the terms and conditions of the policy. The agreement does not inform the renter that the policy in question, a comprehensive liability policy issued by Liberty Mutual Insurance Company (Liberty), insured Avis, Chrysler Leasing Corporation (Chrysler), the record owner of the vehicle, and any operator of a Chrysler Avis vehicle other than a renter for liability up to $500,000 per person and $1,000,000 for each accident.

On the day the car was rented, while Benson was operating it on his way to Siegel's residence in Long Island, he became involved in a three-car accident, resulting in the death of James M. Kelly, owner and operator of one vehicle, and Kelly's wife Mary. An action was thereafter commenced by the administrators of the Kelly estates against Chrysler, Avis, Herbert Siegel, Adolphus Benson and also

against Ben Cohen, the operator of the third vehicle and Ben's Carpet Service, the owner of that vehicle.

Liberty's counsel assumed the defense of the action on behalf of Avis, Chrysler, Siegel and Benson. After a jury verdict in favor of plaintiffs against the defendants, the claim of James Kelly's estate was settled for $347,500, of which amount Liberty paid $322,500. The claim of Mrs. Kelly's estate was settled for $102,500, of which amount Liberty paid $77,500. The amount paid by Liberty in settlement of the claims of James Kelly's estate was within the limits of its coverage to Avis but exceeded the coverage provided the renters of the vehicle by $222,500.

Some four years after the settlement, Liberty, Chrysler and Avis commenced this action against Benson, Siegel, Chris-Craft Industries (Chris-Craft), successor to Baldwin-Montrose, American Motorists Insurance Company (American), Employers Surplus Insurance Company (Employers) and Federal Insurance Company (Federal), seeking to recover the amount of the settlement in excess of the limits of coverage provided to the renters. Employers and Federal conceded that insurance policies issued by them to Baldwin-Montrose were applicable to the underlying action. American disputed the applicability of its policy.

Two causes of action were set forth. In the first cause of action brought against Benson, Siegel and Chris-Craft, Liberty, as subrogee of Avis and Chrysler, sought recovery of $222,500, representing the amount paid by Liberty in excess of its coverage to the renters of the vehicle. The second cause of action, directed against Federal, Employers, and American, sought a declaration that they were excess insurers, obligated to pay $222,500 on behalf of Benson, Siegel and Chris-Craft. Benson died after the action was commenced and the Public Administrator of New York County was appointed administrator of his estate. First Liberty, and then all of the parties except Employers, moved for summary judgment.

Special Term granted summary judgment in favor of Liberty on the first cause of action and declared as to the second cause of action that the defendant insurance companies were jointly and severally liable to pay the amount

awarded to Liberty, directing an equal apportionment among the three. Following a motion to renew by American, thereafter joined in by the other defendants, Special Term adhered to this determination.

We disagree, reverse the order entered following the motion to renew (dismissing the appeal from the first order and judgment as academic), grant the motions of the defendants Siegel, Public Administrator, and Chris-Craft for summary judgment dismissing the first cause of action, and accordingly grant the motion of the several defendant insurance companies to declare that they are not liable to plaintiffs for any part of the sum claimed.

The most important of the issues presented is whether under the circumstances disclosed, Liberty, indisputably the real party in interest, is entitled to recover in what is in effect a subrogation action from its own insured. Although there appears to be no reported decision addressing this question in the context of automobile liability insurance, it is a familiar, long-established, often repeated principle of insurance law that "[n]o right of subrogation can arise in favor of the insurer against its own insured since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." (16 Couch, Cyclopedia of Insurance Law [2d ed], § 61:133; see, also, 2 Richards, Insurance [5th ed], § 185; 6A Appleman, Insurance Law and Practice, § 4055.)

On this appeal Liberty has argued that this well-established principle, although uniformly stated without qualifying language, means only that an insurer may not recover from an insured the sum it is obligated to pay under the insurance policy. None of the authorities cited by Liberty supports this construction. At best from Liberty's viewpoint, the several decisions it relies on, representing one of two divergent bodies of authorities that have developed in response to issues arising out of builder's risk insurance policies, support the right of recovery by insurers on the basis of an interpretation of such policies that does not affect the applicability of the general principle to the issues here presented.

Builder's risk insurance policies, providing property loss coverage for owners and contractors in connection with

construction, customarily include language which extends the protection to property owned by subcontractors "as their interests may appear." The issue has typically developed where the insurer has paid the owner or general contractor for damage to its property and then seeks to recover from the subcontractor on the claim either that the subcontractor had negligently caused the damage to the property or had agreed to indemnify the owner or general contractor.

One line of cases, adopting what has been called the Louisiana Rule, has denied any right of recovery to the insurer. In essence, these decisions find that the subcontractor is a coinsured under the policy, that the policy insures the subcontractor to the extent of its interest from liability for negligence, and that the insurer is accordingly barred from recovery in a subrogation action from the subcontractor. Among the varied policy considerations advanced to support that result, the one most pertinent here is the conflict of interest inherent in a situation in which an insurer is permitted to recover from an insured who is under a duty to co-operate fully with his insurer. (See, e.g., *Baugh-Belarde Constr. Co. v College Utilities Corp.*, 561 P2d 1211 [Alaska]; *Transamerica Ins. Co. v Gage Plumbing & Heating Co.*, 433 F2d 1051; *New Amsterdam Cas. Co. v Homans-Kohler, Inc.*, 305 F Supp 1017; *United States Fire Ins. Co. v Beach*, 275 So 2d 473 [La].)

Those decisions that have sustained recovery by an insurer against the subcontractor under builder's risk insurance policies have done so on the basis of a very different construction of the policies, and one that provides no clear support for Liberty's action here. (See *Tishman Co. v Carney & Del Guidice*, 36 AD2d 273, affd 34 NY2d 941; *Turner Constr. Co. v Kelly Co.*, 442 F Supp 551; *McBroome-Bennett Plumbing v Villa France*, 515 SW2d 32 [Tex].)

Typical is the analysis in *Tishman* (*supra*), the single authority most heavily relied upon by Liberty. In sustaining the insurer's right to recover in a subrogation action from the subcontractor, this court said (36 AD2d, at p 274): "The policies, however, insured only the structure for loss by fire or other included risk. These policies did not insure the assureds against liability to others. Had this been the

coverage of the policies, the defendant would have been protected and the cases cited in the dissent would have had application." The clear implication of the quoted language is that the court would have denied recovery if it had interpreted the policy to insure the subcontractor against liability to others. This indeed is the distinction set forth in *Turner Constr. Co. v Kelly Co. (supra)*, another case relied upon by Liberty here (442 F Supp, at p 554): "The cases rejecting the 'Louisiana Rule' draw a clear distinction between a subcontractor who is insured against property damage alone as opposed to a subcontractor who is additionally protected for his legal liability."

Apart from the builder's risk policy cases, our attention has been called to only a handful of cases that have addressed the issue of the right of an insurance company to recover in a subrogation action from an insured for an amount in excess of the coverage extended to the insured. With one exception, these few cases, applying the general principle, consistently deny the insurance company's right to subrogation. (See *Home Ins. Co. v Pinski Bros.*, 160 Mont 219; *General Ins. Co. of Amer. v Stoddard Wendle Ford Motors*, 410 P2d 904 [Wash]; *Federal Ins. Co. v Tamiami Trail Tours*, 117 F2d 794; *Stafford Metal Works v Cook Paint & Varnish Co.*, 418 F Supp 56.)

*Transport Trailer Serv. v Upjohn Co.* (506 F Supp 442), the one case in this group that supports the right to recovery, involved two separate insurance policies, one providing insurance for property and fire damage, and the second providing property damage liability insurance. Having paid one insured for its fire and property damage loss, the insurance company sought to be subrogated to that insured's claims for damages allegedly caused by the negligence of its second insured to the extent to which the amount paid exceeded the limits of its liability coverage. On a motion for summary judgment, the court refused to preclude the right of the insurance company to be subrogated to this claim, reasoning that a denial of the right of subrogation would provide a windfall to the culpable party because of the fortuitous circumstance that the damaged party had been independently insured by the same insurance company. Even in that kind of situation, a persuasive

one for permitting recovery by the insurer, two other cases, applying the general rule, denied subrogation. (See *Home Ins. Co. v Pinski Bros., supra; Stafford Metal Works v Cook Paint & Varnish Co., supra.*)

From the foregoing review it is apparent that, with arguable exceptions not here relevant, the rule is firmly established that an insurance company may not be subrogated to the claim of one insured against another insured even where the amount sought to be recovered is in excess of the coverage provided. However, an additional argument developed by Liberty merits consideration.

The point is correctly made that all the reported decisions directly addressing the issue have involved subrogation actions in which the insurance company undertook to establish the liability of its insured. The argument is advanced that here the liability of the insured was adjudicated in an action brought by independent parties in which Liberty represented the insured and, so far as the record shows, did so conscientiously and in good faith. It is argued that here the conflict between the obligations assumed by an insurance company and the effort to fix liability on its insured is either nonexistent or assumes a form so different that it would be appropriate to determine the issue of the right to recover by applying the standard of good faith.

Whatever might be the merit of this argument in a situation in which the insured was scrupulously informed from the beginning of the potential for conflict inherent in the insurance arrangements, and in which its right to separate representation was carefully safeguarded, it seems to us unpersuasive under the circumstances presented here. The record is clear that at the time the car was rented the renters were not told that the insurance extended was part of a two-tier coverage system. In effect, the renters were committed by the rental agreement to cooperate with the insurer in the event of an accident without knowing that circumstances might arise as to which the insurer reserved the right to sue them. Nor were the renters informed of this possibility at the time Liberty assumed the defense of all the defendants in the underlying wrongful death action or at any time prior to the settlement of that action.

The situation is not one in which an unusual sequence of events resulted in a conflict of interest to which an insurance company appropriately responded by promptly and carefully arranging separate representation. The conflict here was inherent in the very nature of insurance arrangements that were not disclosed to the renters either at the beginning or for critical periods of time thereafter. Under these circumstances it would violate fundamental principles to permit subrogation by the insurance company.

In the light of the foregoing, it is unnecessary to address other issues raised on the appeal other than to note that in our view factual issues were presented as to whether the insurance policy issued by American provided coverage applicable to the accident in question, and that the varied motions for summary judgment did not give adequate notice to the insurance company defendants that Special Term, if it reached the conclusion that it in fact reached, would undertake to determine the relative liabilities of the insurance company defendants.

Accordingly, the order of the Supreme Court, New York County (OKIN, J.), entered September 17, 1980, which granted renewal, and upon renewal adhered to the original determination embodied in an order and judgment (one paper) of March 19, 1980, granting Liberty summary judgment for $222,500 against the Public Administrator as administrator of the estate of Adolphus Benson, deceased, Herbert Siegel and Chris-Craft on its first cause of action for indemnity, and granting summary judgment on the second cause of action against the several defendant insurance companies, should be reversed, on the law, with costs, the motions of the defendants Public Administrator, Siegel and Chris-Craft for summary judgment dismissing the first cause of action should be granted and the motions of the several defendant insurance companies to declare that they are not liable to plaintiffs for any part of the sum claimed should be granted.

The appeal from the order and judgment entered on March 19, 1980, is dismissed as academic, without costs and without disbursements.

KUPFERMAN, J. P., BIRNS and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on September 17, 1980, unanimously reversed, on the law, the motions of the defendants Public Administrator, Siegel and Chris-Craft for summary judgment dismissing the first cause of action granted and the motions of the several defendant insurance companies to declare that they are not liable to plaintiffs for any part of the sum claimed granted. Defendant shall recover of plaintiffs one bill of $75 costs and disbursements of this appeal. The appeal from the order and judgment (one paper), of said court, entered on March 19, 1980, dismissed as academic, without costs and without disbursements.