KEYSTONE PAPER CONVERTERS, INC. and Philadelphia Papers, Inc.

v.

NEEMAR, INC.

v.

PHILADELPHIA ELECTRIC CO., Gould Company, Inc., and Robbins Electrical Distributors, Inc.

Civ. A. No. 81–2827.

United States District Court, E.D. Pennsylvania.

March 8, 1983.

A. Richard Bailey (Keystone), Philadelphia, Pa., for plaintiff.

Thomas J. Kelley, Philadelphia, Pa., for Neemar.

James Wilder, Philadelphia, Pa., for Gould, Inc.

Peter S. Miller, Philadelphia, Pa., for PECO.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This action arises out of a fire that occurred on the premises of plaintiff Keystone Paper Converters (Keystone) on September 6, 1980. The fire caused damages totally $57,756.00 to Keystone, of which all but $2,000.00 was paid by its insurer, Travelers Insurance Company (Travelers).[1] At the time of the fire, Philadelphia Papers, Inc. (Philadelphia Papers) had paper on Keystone's premises, and it also suffered damages, which were covered by Reliance Insurance Company. Philadelphia Papers and Travelers, as subrogee of Keystone, brought this action against Neemar, Inc. (Neemar), who had installed new electrical switchgear equipment at Keystone's premises shortly before the fire. More than three months after the complaint was filed, Neemar moved for leave to file a third-party complaint against Philadelphia Electric Company (PECO), Gould Company, Inc. (Gould) and Robbins Electrical Distributors, Inc. (Robbins). Leave was granted, and the third-party complaint was filed. The claim against PECO is based upon its actions in repairing electrical fixtures at Neemar's premises after an earlier fire. The claim against Gould and Robbins is based upon Robbins' sale to Neemar of switchgear manufactured by Gould. This switchgear was used in the equipment installed by Neemar in Keystone's premises.

Subsequently, Neemar sought and obtained leave to amend its answer by asserting a counterclaim against Keystone, based upon its alleged negligence in covering its overhead sprinkler system with a wooden ceiling. Neemar contends that, due to this negligence, Keystone should be held liable for contribution or indemnity over to Neemar on Philadelphia Papers' claim.

[1]. The parties have stipulated to the damage figures.

The controlling issue involves Travelers' dual role in these proceedings. Travelers is essentially a co-plaintiff in this action, as subrogee of Keystone. However, Travelers also insures the defendant Neemar under an unrelated liability policy. The third-party defendants have raised this fact as an issue in motions for partial summary judgment. They contend that Travelers is attempting to subrogate against its own insured Neemar, and, as third-party defendants, they should be able to raise this defense. Accordingly, they claim that Keystone should be barred from suing Neemar to the extent of Travelers' subrogation interest. I agree and will grant the motions for partial summary judgment.

DISCUSSION

Although there are no Pennsylvania state appellate decisions that have dealt with this issue, there exists a large body of law to the effect that an insurer may not subrogate against its insured.[2] See *Employers of Wausau v. Purex Corp.*, 476 F.Supp. 140 (E.D.Pa.1979); *Turner Const. Co. v. John B. Kelly Co.*, 442 F.Supp. 551 (E.D.Pa.1976) and cases cited therein. In general, the rationale for this rule of law is that "by definition subrogation arises only with respect to the rights of the insured against third parties to whom the insurer owes no duty." 16 Couch on Insurance § 61:133 (2d ed. 1966). Travelers concedes this principle, but contends that it is inapplicable here and that the third-parties' motions are untimely and extraneous to the issues before me.

A. *Timeliness and Relevancy.*

In arguing that the subrogation issue is untimely and irrelevant, Travelers relies primarily upon Judge Shapiro's well reasoned analysis in *Transport Trailer Service, Inc. v. Upjohn*, 506 F.Supp. 442 (E.D.Pa. 1981). In *Transport*, Aetna Casualty and Surety Company (Aetna) had subrogated to the plaintiff's rights, after paying for fire loss and property damage. This loss resulted from a fire allegedly caused by defective polyurethane foam that was manufactured and sold by the defendant. At the time of the fire, Aetna also insured the defendant under a liability policy, with a $5,000,000.00 deductible. The defendant's previous losses and the amount in issue did not equal this deductible amount, so it was clear to the court that Aetna was not responsible for the defendant's liability arising from the suit. 506 F.Supp. at 444.

The defendant brought a motion for partial summary judgment, arguing that the rule barring subrogation against one's own insured applied. In response, Aetna argued that the defendant's motion was untimely, in that it represented an affirmative defense that was not plead in the answer. The court ruled that, whether the motion would be viewed as one for partial summary judgment or one to amend the complaint, it was clear that the motion was untimely. By granting the motion, Aetna would be unduly prejudiced, for defendant was aware of this issue throughout its trial preparation, but failed to raise it until after the case was placed in the trial pool. *Id.* at 443. Therefore, the court denied the motion but granted leave to the defendant to implead Aetna as a third-party. In this way, if the defendant was found negligent on the initial claim, it could assert a claim against Aetna based upon a possible breach of the insurance policy. *Id.* at 444.

■ Travelers does not argue that the third-party defendants' defense is insufficient for failure to specifically plead it under Federal Rule of Civil Procedure 8(c). As the court in *Transport* noted, failure to raise an affirmative defense does not forever bar a party from raising it, for a remedy exists under Federal Rule of Civil Procedure 15. *Id.* at 443. This rule provides that leave to amend pleadings "shall be freely given when justice so requires." I find that justice would require granting leave to amend in this case, if an issue were raised concerning the propriety of the present motion.

■ Travelers' chief contentions, rather, are that considering the claim at this time would be prejudicial to Keystone, as it has

**2.** The parties concede that Pennsylvania law applies.

been raised too late in the proceedings, and that consideration is premature, in that the issue is not ripe unless Neemar is found negligent on the initial claim. The latter contention is clearly without merit. In effect, Travelers is claiming that questions regarding its relationship with the parties are irrelevant unless Neemar is found guilty and contribution or indemnity come into issue. This argument ignores the plain language of Federal Rule of Civil Procedure 14(a), which provides: "The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."

The policies behind Rule 14(a) make it particularly appropriate that the third-party defendants' defense is heard now, before disposition of Keystone's claim against Neemar. I cannot ignore that the original claim, by Keystone against Neemar, is essentially a claim by an insurance company against itself. As Keystone itself asserts, "in the instant case, there is absolutely no indication that Travelers is seeking to avoid coverage or pass the risk of loss to Neemar." Further, Keystone states: "Indeed, Neemar is being defended pursuant to its policy with Travelers." Plaintiff's Memorandum at 14. If I am to accept these assertions as true, this means that Travelers is making use of subrogation law to sue itself in court. With the case postured as such, it is highly likely that Neemar, who is being defended by Travelers, will have incentive to be found negligent on the initial claim, so that the loss may be passed to the third-party defendants in whole or in part. In this way, Travelers can pass some or all of its losses to parties that it does not

insure. As the case is structured presently, Travelers cannot avoid loss since Keystone has not brought a claim against these third-parties.

Illustrative of the problems that are presented by this situation, Neemar, through counsel that is paid for by Travelers, has taken the position that the present motion should not be granted.[3] Accordingly, counsel for Neemar posits that its client should be sued. The questions that this position raises with regard to a conflict of interest between Travelers and Neemar will be discussed in depth below. For purposes of the issue of timeliness, it is sufficient to note that this situation evidences appearances of impropriety between the plaintiff and defendant. The very purpose of allowing a third-party defendant to raise defenses against the plaintiff, where the defendant fails to do so, is to avoid this type of inappropriate situation. As stated in *F & D Property Co. v. Alkire,* 385 F.2d 97, 100 (10th Cir.1967):

> For the purpose of defense against the plaintiff's complaint, a third party defendant is in the law suit as an adverse party to the same extent as the defendant and must act accordingly. This assures a third party defendant complete defense protection in an action where he may be liable for the judgment in favor of the plaintiff.

*Quoted in* Wright & Miller, Federal Practice and Procedure: Civil § 1457 (1971). Thus, plaintiff and defendant are incorrect in stating that the issues presented by this motion are not ripe for disposition.

---

**3.** Defendant's memorandum of law states *in toto:*

> Defendant, Neemar has previously adopted by reference the legal memorandum of Plaintiff, Keystone in opposition to that of Third Party Defendants Gould and Robbins because it is Defendant's position that Plaintiff's claim is not barred as to the Third Party Defendants for the particular reason raised by them.
>
> However, it is also Defendant's belief that it would be inequitable to dismiss Plaintiff's claim against the Third Party Defendants without according the same relief to Defend-

ant inasmuch as the defense asserted would apply to all of the Defendants. For that reason Defendant, Neemar, Inc. would request that if Third Party Defendant's Motion is granted that this Honorable Court also bar Plaintiff, Keystone's claim against the original Defendant. Accordingly, proposed Orders in the alternative are attached hereto. Where defendant's position is that the plaintiff's claim is not barred, I do not find the second paragraph to be any more than a statement of what obviously would be the case if I decide against the plaintiff.

The same dangers of collusion in the initial action negate Travelers' claim that it is prejudiced by the late advancement of the partial summary judgment motions. In particular, where the defendant has not raised a defense that would bar the action by Keystone against it and even submits that this defense is without merit, the timing of the third-party defendants' motions cannot be scrutinized strictly. As stated in a somewhat different context: "[W]hen it appears that circumstances indicate collusion between the parties to the initial action, the third-party defendant should not be held to the third-party plaintiff's inaction." Wright & Miller, *supra,* § 1457. In the same manner, the third-party defendants have been presented with a situation of possible undue prejudice to their positions. Because the ramifications of this situation may not have been readily apparent throughout these proceedings, and because larger questions of public policy are presented, the same rationale applies. In the normal course of events, Neemar would have brought this defense. Thus, in part, Keystone is requesting that the third-party defendants be held to Neemar's inaction.

Moreover, Travelers is not being unduly prejudiced by my consideration of these motions. By its own allegations, it is admitting liability for any judgment against Neemar. Thus, it is difficult to envision the prejudice that would result from denying Travelers the opportunity to recover against itself. *Transport,* which is relied upon by Travelers, is inapposite. In that case, the insurer did not have liability to the defendant for any judgments against it arising from that suit.

It is true that, if I grant the motions at hand, Travelers may lose the ability to pass this loss to the third-party defendants in whole or in part. However, this possibility is the product of a method of proceeding for which Travelers alone is responsible. It has not been lulled into inactivity by any affirmative acts of the third-party defendants, nor was this the only manner in which it could seek recovery from these parties.

I further find that Travelers' argument that Keystone will be prejudiced by hearing these motions is without merit. Keystone has recovered from Travelers all but $2,000.00 of its damages, and these motions request only that the suit by Keystone be barred to the extent that Travelers has subrogated to its rights. Accordingly, in ruling that this defense should be heard, I do not apply a rule of law mechanically, without consideration of possible prejudice to the parties. Rather, the motions present serious public policy questions concerning conflicts of interests and misuse of judicial procedures.

### B. *The Rule Barring Subrogation Against One's Insured.*

Keystone, as represented by Travelers, admits the general rule that an insurer may not pursue a subrogation action against its insured but claims that the rule should not be applied here. Travelers distinguishes many of the cases barring subrogation actions against an insured on the grounds that these decisions involve builder's risk policies. Accordingly, under the "Louisiana rule," as it is known, an insurer cannot pay a general contractor for its losses and then seek to recover from a subcontractor who is named, directly or indirectly, as an additional insured in the same policy. *See e.g., Chrysler Leasing Corp. v. Public Adm'r, New York County,* 85 A.D.2d 410, 448 N.Y.S.2d 181 (1982) and cases cited therein. Travelers also states that the other single policy cases are distinguishable on the same grounds. *See also, Royal Exchange Assurance of America, Inc. v. SS President Adams,* 510 F.Supp. 581, 583 (W.D.Wash.1981) ("Clearly there can be no recovery for damages caused by insured activities . . ." under the same policy).

However, this argument ignores that the courts have extended the rule beyond single insurance policy instances to cases such as the present one, where two unrelated policies, one for property and one for liability, are involved. *See Royal Exchange, supra,* 510 F.Supp. at 584; *Stafford Metal Works, Inc. v. Cook Paint and Var-*

*nish Co.,* 418 F.Supp. 56 (N.D.Tex.1976); *Home Insurance Co. v. Pinski Brothers, Inc.,* 160 Mont. 219, 500 P.2d 945 (1972). The reasons for applying the rule in these instances are perhaps best set forth by the court in *Pinski:*

> To permit the insurer to sue its own insured for liability covered by the insurance policy would violate ... sound public policy. Such action, if permitted would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

500 P.2d at 949.

Keystone argues that the underlying rationale presented in *Pinski,* one of breach of duty and conflict of interest, is inapplicable to the case at hand. First, Keystone states that the third-party defendants have cited no instance of any breach of duty. Plaintiff's Memorandum at 13. Second, Keystone argues that, as Neemar is being defended pursuant to policy with Travelers, there is no evidence that Travelers is attempting to pass its losses to Neemar. *Id.* at 14. Further, plaintiff argues that, even if questions of breach of duty are presented in this action, these issues can be litigated as a separate matter. In this regard, Keystone relies on *Transport,* where the court stated:

> [I]f the insurer secures information from its insured under policy provisions requiring cooperation to enable defense of a claim against it and such information is used, not in defending the insured but in asserting an adverse claim against the insured on behalf of another, there may be a breach of duty, express or implied,

which provides a basis for liability of the insurer to the insured in that specific case. See, *Gruening v. Sucic,* et al., 502 F.Supp. 719 (E.D.Pa.1980).

In view of the likelihood of the variety of contractual provisions and fact situations which might conceivably be involved, a broad prohibition of any subrogation action by any insurer against any insured goes far beyond the necessities of this case. The liability of the insurer to the insured on relevant principles of law and of equity should be litigated separate and apart from plaintiff's claim against the defendant if defendant chooses to file a third party claim against its insurer. Upjohn will first present its defense to Transport's claim. If Upjohn prevails against Transport, its dispute with Aetna may be limited. If it loses and Transport establishes a right to recover, Upjohn's legal and/or equitable rights against Aetna as an insured can then be determined. Transport will not be prejudiced because these issues can readily be tried separately. Fed.R.Civ.P. 42(b).

*Transport, supra,* 506 F.Supp. at 444. Accordingly, all questions of timeliness aside, Keystone argues that Neemar can litigate any claims of breach of duty by Travelers as a separate matter.

The rationale in *Transport,* although correct on its facts, is inapposite to the present situation. First, although plaintiff argues that there is no evidence of breach of duty to Neemar by Travelers, it ignores that Neemar's attorney, who is being paid by Travelers to defend this suit, has taken the position that Keystone should be able to sue his client. At the risk of being repetitive and without holding that this action, *per se,* constitutes a breach of duty by Travelers, it nevertheless is evidence that Neemar's interests are in jeopardy. Plaintiff contends that there is no evidence that Travelers is attempting to pass its losses to Neemar, but there is no evidence in the record to substantiate a contrary conclusion. Thus, it is entirely possible that Travelers may seek to avoid coverage, if it cannot pass this loss to the third-party defendants in whole or in part. Even if Neemar's possible losses are

passed over to the third-party defendants or Travelers, Neemar nevertheless may end up with a judgment against it. This result may increase its insurance premiums or make it a less insurable entity. It also may affect its credit rating. Where the insured's attorney takes the position that the insurer should be able to proceed against the insured, these possibilities cannot be taken lightly. I cannot conclude simply that Neemar is without risk. In sum, the situation brought about by proceeding as Travelers has done is not proper.

Accordingly, plaintiff's argument that the issues of a conflict of interest and Neemar's liability are separate ignores that Travelers' incentive may be to have Neemar found negligent, so that the loss can be passed to the third-party defendants. The risk is great that Neemar's defense will not be pursued as strongly as it might otherwise. Where Neemar and Travelers are not so clearly adverse as the defendant and the insured in *Transport* were, and where Travelers is providing Neemar's defense, the issues of conflict and liability may overlap. Therefore, unlike *Transport,* I hold that relegating the defendant to a claim against the insurer does not alleviate sufficiently the tensions created by the posturing of this case.

Plaintiff also points out that Neemar may receive a "windfall" if I grant the motions for partial summary judgment. Plaintiff likens this case to *Transport,* where the court stated:

> To preclude any subrogation claim by Aetna on behalf of any other company insured by Aetna which may have a valid claim against Upjohn when this deductible amount has not yet been exhausted might allow Upjohn an unbargained for, unpaid for, windfall; a risk not otherwise insured against would in effect be covered by Upjohn's insurance policy with Aetna because of a fortuitous fact, *i.e.,* that that liability was asserted against Upjohn by a party, Transport, which also happens to be insured by Aetna.

506 F.Supp. at 444.

However, plaintiff also asserts that Travelers is not attempting to pass the loss at hand to Neemar. If this is true, then Neemar is being fully insured for its liability in this case through its own policy, not Keystone's. Neemar, unlike the defendant in *Transport,* does not have a deductible amount that was not reached. Therefore, by Travelers' own assertions, this case is distinguishable from *Transport* because the defendant is not attempting to gain coverage from Travelers for a risk not otherwise insured against. I find that the overriding rationale in *Transport* was the court's concern that the defendant would be insured for risks that it did not bargain or pay for, solely because of the fortuitous fact that the plaintiff was also insured by the defendant's insurer. Thus, the court correctly would not employ a blanket "broad prohibition of any subrogation action by any insurer against any insured . . . ." *Id.* Viewed in this light, it is clear that the prohibition should apply in the instant case. Travelers apparently is not extending insurance to Neemar where it would not otherwise.

On the other hand, if, in fact, questions concerning Travelers' coverage of Neemar's liabilities later arise, the rationale in *Stafford, supra,* is particularly in point. In *Stafford,* the insurer subrogated to the rights of the plaintiff, under its fire insurance policy, and undertook to represent the defendant, in respect to its liability policy. The insurer, as the liability insurer and defender of the defendant, settled with the plaintiff for an amount equal to its uninsured losses. This settlement exhausted the liability policy with the defendant and required the defendant to pay a large sum over its policy limits. The plaintiff then dismissed itself from the case, and the insurer withdrew from the defendant's defense and continued the suit against the defendant in its own name. As the court noted, proving bad faith under these facts is extremely difficult. 418 F.Supp. at 63. Accordingly, the court dismissed the insured's suit.

In the instant case, I find the rationale in *Stafford* controlling. Unlike the situation in *Transport,* where the adverse relationship between the defendant and the insurer was clear from the outset, the instant case and *Stafford* present more difficult situa-

tions, where the court cannot be assured that the defendant's representation is adequate. The conflicts are more prevalent, and the issue of the defendant's liability and the insurer's breach of duty are not so clearly unrelated. Thus, *Transport* is distinguishable on the grounds that there it was clear from the start that the insurer and the defendant were adverse parties. Accordingly, any breach of duty by the insurer could be discerned readily and really was a separate issue, as the court noted. 506 F.Supp. at 443. Here, I cannot be certain that these issues will remain separate. The conflicts are apparent, but their effects may be difficult to discern.

Certainly, the rule against subrogation against one's own insured was not promulgated with the situation in mind where an insurer wishes to sue itself in court. However, as pointed out previously, there nevertheless exists dangers for Neemar. Moreover, even if Neemar will never be liable for any judgment in this case, I have grave doubts that the federal courts should be used by an insurer to clean up its books and, "if need be, transfer funds from its liability 'pool' to its indemnity 'pool.'" Plaintiff's Memorandum at 14. Accordingly, to the extent that this suit represents an insurer's internal housekeeping, I hold that the rule against subrogation applies.

The *Transport* opinion also disposes of plaintiff's other arguments which, in actuality, are attempts to distinguish certain policies enunciated in favor of this rule in the *Stafford* decision. As recognized in *Stafford,* the first policy behind applying the rule is that an insurer stands in the shoes of the insured. "Since a person could not bring an action against himself for damages, neither can an insurer who would subrogate himself to that person." 418 F.Supp. at 58. It is clear that this rationale is less appealing in cases such as where the insurer is truly an adverse party to the insured. However, because of the unusual posture of the present case, this rationale is

not merely conceptual. Plaintiff does not provide any justification for allowing an entity to sue itself, and I have found none that exists.

Secondly, *Stafford* states that the very nature of insurance "revolves around understanding and manipulating the concept of risk ...." *Id.* Plaintiff relies on this statement to argue that the public would bear substantially increased costs if every carrier must contemplate being precluded from recovery if "it meets itself at the top." Plaintiff's Memorandum at 11–12. Certainly, this reasoning would be correct if the courts were to blindly apply the rule barring subrogation by an insurer against its insured. However, the decision in *Transport* correctly points out that a blanket application of the rule should not be employed, especially in cases where it is clear that the insurance company has no liability for the matter in issue. Here, plaintiff concedes and even argues that Travelers is providing coverage to Neemar regardless of the outcome of this motion. It is immaterial that Travelers may attempt to reverse this position in the future. By granting this motion, this possibility is foreclosed, as it should be in a case where such obvious conflicts exist.

The court in *Stafford* also cites its reluctance to be viewed as having sanctioned an insurer's breach of its policy of insurance. *Id.* at 58–59.[4] I do not find that Travelers has breached its duty to Neemar. However, grave appearances of impropriety are presented, as stated previously, I find no reason to dwell on these conflicts further, except to say that they are the result of the improper posturing of this case.[5]

In granting the motions for summary judgment against Keystone, I am aware that the third-party defendants may receive a "windfall." However, this possibility is not the result of a blind application of a "technical" rule. Rather, it results from the improper posturing of this case. The

---

4. The court also made reference to the same fiduciary relationship problems presented by this kind of case, relying on *Pinski, supra. Id. See also Royal Exchange, supra,* 510 F.Supp. at 583–84.

5. Plaintiff admits that it could have pursued these claims differently. It is readily apparent that there would not be complete diversity if Keystone proceeded directly against the third-

conflicts arising from this manner of proceeding were as apparent to plaintiff and defendant as they were to the third-party defendants. Moreover, in the instant case, application of this rule is not "technical." Where Neemar and Travelers are not so clearly adverse as the parties in *Transport* were, I decline to follow the Transport holding insofar as the court relegated the defendant to bring in a separate claim against the insurer for breach of its insurance policy. Here Travelers' conduct and Neemar's liability on the Keystone claim may not be unrelated, as pointed out above. On the facts of this case, I find that the rationale announced in *Stafford* is particularly applicable, and I adopt it as my own. I find no policies in Pennsylvania that countenance otherwise. In so ruling, I specifically approve the following reasoning, enunciated by the court in *Stafford:*

> Though Continental argues that insurance companies must constantly deal with conflicts of interests, the present case presents a unique situation. If an insurer were allowed to subrogate under these circumstances, not only would several new areas of conflicts be opened up, but an entirely new type of conflict of interests would also arise in the possibility that an insurer might play favorites between its insureds. The relationship between the insurer and insured would be thoroughly destroyed. Furthermore, the Court can take judicial notice of the fact that proving a claim of bad faith is a very difficult undertaking. Therefore, where conflicts of interests and opportunities for bad faith proliferate to the extent they do in this situation, public policy demands that the situation not be allowed to arise.

> For all the foregoing reasons, the Court is of the opinion that Continental lacks standing to sue by subrogation to Stafford's claim.

418 F.Supp. at 63.

For all of these reasons, third-party defendant's motions shall be granted. An appropriate order follows.

ORDER

NOW, March 8, 1983, upon consideration of third-party defendants' motions for partial summary judgment, the memoranda submitted by the parties, and for the reasons stated in the accompanying memorandum, IT IS ORDERED that:

1. The motions are GRANTED.

2. JUDGMENT IS ENTERED IN FAVOR OF THE THIRD–PARTY DEFENDANTS AND AGAINST DEFENDANT/THIRD–PARTY PLAINTIFF NEEMAR, INC. ON THAT PORTION OF THE CLAIM OF PLAINTIFF KEYSTONE PAPER CONVERTERS, INC. TO WHICH TRAVELERS INSURANCE COMPANY IS SUBROGATED.

3. JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT NEEMAR, INC. AND AGAINST PLAINTIFF KEYSTONE PAPER CONVERTERS, INC. ON THAT PORTION OF THE CLAIM TO WHICH TRAVELERS IS SUBROGATED.

party defendants, but I caution the parties that the proper posturing of a case should weigh heavier than the interests of conferring jurisdiction on this court.