FIDELITY AND GUARANTY IN-
SURANCE UNDERWRIT-
ERS, INC., Plaintiff,

v.

AMERICAN BUILDINGS COMPANY,
INC., Third–Party Plaintiff,

v.

JOSEPH BANKS CONSTRUCTION CO.
INC. and David C. Strach and Patrick
Capitano, individually and d/b/a Strach
Associates, Defendants.

v.

John J. PASSAN, Gail Desciose and Rich-
ard J. Passan, Co–Partners of Laughlin
Partners, Valley Distributing and Stor-
age Company, Inc., G.M. Clum, Inc., and
United Structures, Inc., Third–Party De-
fendants.

TECHNEGLAS, INC., Plaintiff,

v.

JOSEPH BANKS CONSTRUCTION CO.
INC., American Buildings Company,
David C. Strach and Patrick Capitano,
individually and d/b/a Strach Associates,
Defendants.

v.

John J. PASSAN, Gail Desciose and Rich-
ard J. Passan, Co–Partners of Laughlin
Partners, Valley Distributing and Stor-
age Company, Inc., G.M. Clum, Inc., and
United Structures, Inc., Third–Party De-
fendants.

SONOCO PRODUCTS COMPANY,
Plaintiff,

v.

JOSEPH BANKS CONSTRUCTION
CO. INC. and American Buildings
Company, Third–Party Plaintiffs,

v.

David C. STRACH and Patrick P.
Capitano, Individually and d/b/a
Strach Associates, Defendants,

v.

John J. PASSAN, Gail Desciose and Richard J. Passan, Co–Partners of Laughlin Partners, Valley Distributing and Storage Company, Inc., G.M. Clum, Inc., and United Structures, Inc., Third–Party Defendants.

No. 3:CV–95–129.

United States District Court,
M.D. Pennsylvania.

July 23, 1998.

Hecker, Brown, Sherry & Johnson, Philadelphia, PA, for Technaglas, Inc.

Scanlon, Howley, Scanlon & Doherty, Scranton, PA, for Joseph Banks Constr.

Bennett, Bricklin & Saltzburg, Philadelphia, PA, for American Building.

## MEMORANDUM

VANASKIE, District Judge.

On August 25, 1997, defendant American Buildings Company (ABC) filed a motion for summary judgment against plaintiff Techneglas, Inc., asserting that Home Insurance Company (Home), the insurer subrogee of Techneglas' interest, was barred from litigating a subrogation claim against ABC because Home also insured ABC under a commercial umbrella policy in the amount of $25,000,000. (Dkt. Entry 142.) Because an insurer may not assert a subrogation claim against its insured, ABC's motion for summary judgment will be granted.

ABC had asserted a third party claim against John J. Passan, t/a Valley Distributing & Storage Co. and Laughlin Partners (collectively referred to herein as "Passan"), seeking contribution and/or indemnification for any liability that ABC may incur as a result of Techneglas' action. On June 15, 1998, Passan filed a motion for partial summary judgment, contending that its third party liability to ABC must be reduced to the extent that ABC's liability to Techneglas is reduced. (Dkt. Entry 178.) Because ABC may no longer be liable for any of Techneglas' insured losses, Passan's motion for partial summary judgment will be granted in relation to ABC's claims for indemnification and/or contribution for Techneglas' insured losses.

## I. BACKGROUND

On October 11, 1989, Passan entered into a contract with defendant Joseph Banks Con-

struction Co., Inc. (Banks) for the construction of a pre-fabricated warehouse facility in Wilkes–Barre, Pennsylvania. (ABC's Stat. of Facts (Dkt. Entry 100) Exhibit E, ¶ 1; Plf's Stat. of Facts (Dkt. Entry 113) ¶ 1; Bank's Stat. of Facts (Dkt. Entry 170) ¶ 1; Plf's 2d Stat. of Facts (Dkt. Entry 215) ¶ 1.) On October 12, 1989, Banks placed a purchase order to ABC on an ABC purchase order form for one of ABC's pre-fabricated warehouse units. (ABC's Stat. of Facts (Dkt. Entry 100) Exhibit E, ¶ 2; Plf's Stat. of Facts (Dkt. Entry 113) ¶ 2.) This purchase order was filled out by Jim Hill, an ABC district manager, with the assistance of Banks' employee Darrell Logan, now deceased. (Plf's Stat. of Facts (Dkt. Entry 113) ¶ 2; Plf's 2d Stat. of Facts (Dkt. Entry 215) ¶ 2.) ABC completed its shipment to Banks on February 22, 1990. (ABC's Stat. of Facts (Dkt. Entry 100) Exhibit E, ¶ 5; Plf's Stat. of Facts (Dkt. Entry 113) ¶ 5.) Shortly thereafter, Banks completed the construction of warehouse.

On March 7, 1994, the roof collapsed and the warehouse was destroyed. (ABC's Stat. of Facts (Dkt. Entry 100) Exhibit E, ¶ 7; Plf's Stat. of Facts (Dkt. Entry 113) ¶ 7.) At the time the warehouse collapsed, Techneglas was storing equipment and products in the warehouse. As a result of the collapse, Techneglas suffered damage to its property in the amount of $1,036,402.00. (Plf's Opp. Brf. (Dkt. Entry 147) at 3.) Of that amount, Home paid Techneglas $823,404.36. (*Id.* Ex. B.) As a result, roughly $200,000 of Techneglas' damages were not covered by the Home policy.[1]

Techneglas instituted a civil action against ABC to recover its damages. ABC then instituted a third party action against Passan, seeking contribution and/or indemnification from Passan for any damages in the event that ABC was determined liable to Techneglas. ABC had primary insurance from Northfield Insurance Company with an aggregate limit of $1,000,000. (ABC's S.J. Mot. (Dkt. Entry 142) ¶ 6.) This $1,000,000 has been paid by Northfield Insurance Company. (ABC's Reply Brf. (Dkt. Entry 157) at 1.) ABC has an umbrella policy of $25,000,000

maintained through Home, which ABC contends now covers any damages suffered by Techneglas. (ABC's S.J. Mot. (Dkt. Entry 142) ¶¶ 7, 11.)

## II. DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that ABC's motion raises a question of law.

It is well settled that an insurer may not assert a subrogation claim against one of its insureds. *See Employers of Wausau v. Purex Corp.*, 476 F.Supp. 140, 142–43 (E.D.Pa. 1979) (" 'No right of subrogation can arise in favor of the insurer against its own insured, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty.' ") (quoting 16 *Couch on Insurance 2d* § 61:133 (1966 & 1978 Supp.)); *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 303 (Mo.Ct.App.1997) ("No right of subrogation can arise in favor of an insurer against its own insured, since, by definition, subrogation arises with respect to rights of the insured against third persons to whom the insurer owes no duty."); *Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae*, 243 A.D.2d 168, 674 N.Y.S.2d 280, —— (1998) ("It is settled that a carrier may not utilize subrogation to maintain an action against its own insured with respect to a loss covered by the policy of insurance. To condone such a course would permit the carrier to recover from its own insured for the very loss against which the insurance policy provides indemnification, a direct breach of the carrier's primary contractual obligation."); *Remy v. Michael D's Carpet Outlets*, 391 Pa.Super. 436, 447, 571 A.2d 446 (1990) ("By definition, subrogation can arise only with

---

**1.** ABC represents that its summary judgment motion pertains only to "claims by Techneglas, Inc. which arise from amounts paid by Home Insurance Company to or on behalf of Techneglas, Inc. under its major lines property policy."

(ABC's Reply (Dkt. Entry 157) at 2.) Thus, ABC concedes that its summary judgment motion does not relate to any uninsured amount and that Techneglas may maintain a suit to recover that uninsured amount. (*Id.*)

respect to the rights of an insured against third persons to whom the insurer owes no duty. It follows and, indeed, is well established that an insurer cannot recover by means of subrogation against its own insured." (citations omitted)), *aff'd on other grounds,* 536 Pa. 1, 637 A.2d 603 (1993). This is not the first occasion upon which Home has attempted to assert a subrogation claim against one of its own insureds. In rejecting one of Home's earlier subrogation claims, one court aptly summarized the reasons for the so-called "anti-subrogation" rule:

> To permit the insurer to sue its own insured for liability covered by the insurance policy would violate ... sound public policy. Such action, if permitted would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

*Home Insurance Co. v. Pinski Bros., Inc.,* 160 Mont. 219, 500 P.2d 945, 949 (1972); *Keystone Paper Converters, Inc. v. Neemar, Inc.,* 562 F.Supp. 1046, 1051 (E.D.Pa.1983) (quoting *Pinski* ).

■ Techneglas recognizes that an insurer may not generally assert subrogation rights against one of its insureds. (Tech's Opp. Brf. (Dkt. Entry 147) at 5.) Techneglas contends, however, that the "anti-subrogation" rule applies only where both insureds are named on the exact *same* policy, as opposed to being insureds under different policies. In support, Techneglas relies *solely* upon *Transport Trailer Service, Inc. v. Upjohn Co.,* 506 F.Supp. 442 (E.D.Pa.1981). In that case, the plaintiff's premises caught fire from a defect in defendants' product. The insurer paid for the plaintiff's damages in the amount of $191,040.49 and asserted a subrogation action against the defendant. The insurer, however, had a property damage liability policy with the defendant. This policy contained a $5,000,000 deductible. *Id.* at 443. It was undisputed that this deductible amount had *not* been reached. *Id.* In that case, the court noted:

> [Defendant] has paid Aetna a premium for a products liability policy calculated on a deductible in the amount of $5,000,000, and its incurred losses for the relevant policy year do not yet total that sum. To preclude any subrogation claim by Aetna on behalf of any other company also insured by Aetna which may have a valid claim against [defendant] *when this deductible amount has not yet been exhausted,* might allow [defendant] an unbargained for, unpaid for, windfall; a risk not otherwise insured against would in effect be covered by [defendant's] insurance policy with Aetna because of a fortuitous fact, i.e., that liability was asserted against [defendant] by a party, [plaintiff], which also happens to be insured by Aetna.

*Id.* at 444 (emphasis added). Although the court in *Transport* allowed the insurer to assert a subrogation claim against its insured, it was careful to note that this result was reached by virtue of the fact that insured's deductible had not yet been reached. In other words, the insurer's duty to indemnify had not yet been triggered and a subrogation claim was permissible until the deductible had been exhausted.

In this case, ABC has already exhausted its primary coverage and seeks to rely upon its umbrella policy with Home. There is nothing to suggest that Home has denied that coverage exists. Therefore, this case is easily distinguishable from *Transport,* in which the court was concerned that the denial of the subrogation claim prior to the exhaustion of the deductible would effectively extend the insured's coverage and produce a windfall for the insured to the detriment of the insurer. Techneglas has not suggested that any such danger exists in this case.

Moreover, other courts have applied the "anti-subrogation" rule to instances in which the insureds maintain *separate* policies with the same insurer. *See Royal Exch. Assur-*

*ance v. SS President Adams,* 510 F.Supp. 581, 582–84 (W.D.Wash.1981) (finding that insurer could not assert subrogation claims against an insured where the insured was covered under a separate liability policy); *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.,* 418 F.Supp. 56, 57–58 (N.D.Tex. 1976) (finding that insurer, which was "in the unfortunate position of being at the same time the fire insurer for [plaintiff] and the liability insurance carrier for [defendant]," could not assert a subrogation claim against the defendant-insured); *Pinski Bros.,* 500 P.2d at 946–50 (finding that an insurer, who paid an insured under a property insurance policy, could not assert a subrogation claim for those damages against another insured whose coverage arose from a separate liability policy).

In particular, Judge Huyett's thoughtful analysis of this issue in *Keystone Paper Converters, Inc. v. Neemar, Inc.,* 562 F.Supp. 1046 (E.D.Pa.1983), is persuasive. In that case, a fire damaged the plaintiff's business premises in the amount of $57,756, all but $2,000 of which was paid by the plaintiff's insurer, Travelers. *Id.* at 1047. Travelers then asserted a subrogation action against defendant Neemar, Inc., which had installed the electrical equipment at the premises. *Id.* Travelers insured Neemar under an unrelated liability policy. *Id.* at 1048. Neemar joined several third-party defendants, who moved for partial summary judgment asserting that the plaintiff should be barred from suing Neemar to the extent of Traveler's subrogation interest. In essence, the third-party defendants sought to limit their exposure to the *uninsured* loss sustained by the plaintiff. Travelers argued that the "anti-subrogation" rule applied only to instances of a single policy with multiple insureds. *Id.* at 1050. The court rejected this argument, noting that "courts have extended the rule beyond the single insurance policy instances such as the present one, where two unrelated policies, one for property and one for liability, are involved." *Id.* The court also rejected the argument that there was no evidence

that Travelers had breached any duty that it owed to the defendant. *Id.* at 1051.[2] The court noted that there was a significant danger that the insurer would not vigorously represent its insured in the hope that the insured would be determined liable such that the insurer might then pass its losses to additional third party defendants through defendant-insured's right to contribution and/or indemnification. *Id.* at 1052. Finally, the court noted that the maintenance of the suit was inappropriate in that the insurer was essentially attempting to sue itself. The court stated that such a result was against public policy:

> Certainly, the rule against subrogation against one's own insured was not promulgated with the situation in mind where an insurer wishes to sue itself in court. However, ..., there nevertheless exists dangers for [defendant]. Moreover, even if [defendant] will never be liable for any judgment in this case, I have grave doubts that the federal courts should be used by an insurer to clean up its books and 'if need be, transfer funds from its liability pool to its indemnity pool.' Accordingly, to the extent that this suit represents an insurer's internal housekeeping, I hold that the rule against subrogation applies.
>
> .... Plaintiff does not provide any justification for allowing an entity to sue itself, and I have found none that exists.

*Id.* at 1053.

In this case, ABC seeks judgment only in relation to any subrogation claim that Home may have against it. ABC has represented that it does not seek summary judgment in relation to Techneglas' claims that were not insured by Home. Therefore, ABC's motion for summary judgment simply attempts to prohibit Home from maintaining a subrogation action against ABC which would result in a judgment that Home would nevertheless be liable to pay under its insurance policy with ABC. Given these facts, it is difficult to understand the reason that Home is attempting to assert any claim against ABC, except

---

2. Techneglas also asserts this argument, contending that ABC has failed to suggest that Home has breached any contractual duty and that, even assuming that such a breach occurred, ABC could protect itself through a separate breach of contract and/or bad faith action. (Tech's Opp. Brf. (Dkt. Entry 147) at 9.)

that it hopes to obtain additional reimbursement via claims against third party defendants. If this case were allowed to proceed, Home would have an interest in ABC being found liable because only through such liability would Home be able to obtain recovery from third party defendants not sued by Techneglas. This would not be a proper result. *See Keystone,* 562 F.Supp. at 1053–54 (granting summary judgment despite the potential "windfall" to the third party defendants).

 Techneglas also argues that ABC should be barred from asserting the "anti-subrogation" rule as it was not properly pled as an affirmative defense. (Tech's Opp. Brf. (Dkt. Entry 147) at 9.) Techneglas asserts that this matter has been pending for several years and that Home has expended substantial sums to prosecute this action against ABC. (*Id.* at 10.) ABC's failure to raise the "anti-subrogation" rule as a defense, however, does not require a finding that the defense has been waived. *See Charpentier v. Godsil,* 937 F.2d 859, 863 (3d Cir.1991) ("Failure to raise an affirmative defense by responsive pleading or appropriate motion, however, does not always result in waiver."). A defense may be raised for the first time in a summary judgment motion. *See Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1374 (3d Cir.1993) ("Even though a motion for summary judgment is not the most appropriate way to raise a previously unpled defense of immunity, we think it would be inappropriate in the present case to decide the immunity issue on the basis of waiver."). Moreover, to avoid a finding of waiver, a party can move to amend the answer to include the affirmative defense under Rule 15. *Charpentier,* 937 F.2d at 863–64. ABC has moved for leave to amend its answer to include the "anti-subrogation" defense. (Dkt. Entry 158.)

ABC has conceded that the uninsured claims asserted by Techneglas are unaffected by its affirmative defense and proposed summary judgment order. Thus, there will be no prejudice to Techneglas itself. Techneglas claims that ABC's delay in asserting this defense has caused Home to incur substantial costs in connection with litigating the claims against ABC. Of course, the very propriety of Home's continued litigation of a claim against one of its insureds forms the basis upon which ABC relies for its summary judgment motion. Thus, any potential prejudice that will result to Home must be considered in light of Home's decision to sue one of its own insureds. Under these circumstances, leave to amend to include the "anti-subrogation" defense will be granted. *See Keystone Paper Converters,* 562 F.Supp. at 1048–49. Therefore, Techneglas' waiver argument cannot succeed.[3]

Finally, Passan has also filed a motion for partial summary judgment in connection with this matter. (Dkt. Entry 178.) Passan contends that to the extent that ABC's motion for summary judgment is successful, summary judgment must also be granted in favor of Passan in relation to ABC's third party claim for contribution and/or indemnification against Passan. ABC does not contest this argument. (ABC's Opp. Brf. (Dkt. Entry 187) at 2.) Therefore, Passan's motion for partial summary judgment will be granted with respect to ABC's third party claim for contribution and/or indemnification from Passan for Techneglas' *insured* damages. In relation to ABC's third party claim against Passan for contribution and/or indemnification in relation to Techneglas' claims for

---

**3.** In the only case cited by Techneglas to support its waiver argument, *Transport Trailer Serv., Inc. v. Upjohn Co.,* 506 F.Supp. 442 (E.D.Pa.1981), the defendants attended two pre-trial conferences and filed a pre-trial memorandum without asserting the potential "anti-subrogation" defense. *Id.* at 443. This case is easily distinguishable. First, this case has become a complex litigation involving multiple parties. The potential conflict between Home and ABC was not apparent until Techneglas' damages were confirmed *and* ABC's primary carrier determined that it would tender the limits of its policy.

Moreover, ABC has not unduly delayed. When this motion was raised, the parties were still in the midst of their discovery and the matter was not even remotely ready for trial. Unlike in *Transport,* Techneglas cannot contend that it was prejudiced because it had spent hours in trial preparation. Indeed, Techneglas may continue to use the discovery it has conducted in support of its claim for uninsured losses. Although ABC could have included this defense in its answer in anticipation of the conflict arising, its failure to do so cannot be considered a waiver.

**710**

*uninsured* damages, Passan's motion for summary judgment will be denied.

### III. CONCLUSION

■ When an insurance company is in the business of insuring large commercial enterprises, it is inevitable that certain conflicts will occasionally arise in which the insurer will provide property insurance for the injured insured and general liability insurance for the allegedly offending insured. When such a circumstance arises, the insurer owes a duty to both parties. If the insurer pays for the injured insured's losses under its property insurance, any subrogation claim against the offending insured will ultimately be paid from the insured's own coffers. It would be improper to allow an insured to use the courts as a vehicle to sue itself. Moreover, even where potential third party liability exists in the event that the offending insured is found liable, it would be inappropriate to allow an insurer to sue its own insured. In such a suit, the insurer would have a financial interest in a determination that its insured is liable because only through such a determination may the third party claims of contribution and/or indemnification be asserted. It would be improper to allow an insurer burdened with such a conflict to assert a subrogation claim against its own insured. Therefore, ABC's motion for summary judgment with respect to the Techneglas' *insured* damages will be granted as Home cannot maintain a subrogation action against its own insured, ABC. As a result of this decision, Passan's motion for partial summary judgment will also be granted in relation to ABC's third party claim for any liability arising from Techneglas' *insured* losses.