NEW YORK BOARD OF FIRE UNDERWRITERS, as Authorized Representative of Various Insurance Companies and as Subrogee of the People of the State of New York, Respondent, v TRANS URBAN CONSTRUCTION CO., INC., and LASKER-GOLDMAN CORPORATION, a Joint Venture, Appellant, et al., Defendants.

TRANS URBAN CONSTRUCTION CO., INC., and LASKER-GOLDMAN CORPORATION, a Joint Venture, Third-Party Plaintiff-Appellant, v CENTRAL LATHING CO., INC., Third-Party Defendant.

First Department, January 11, 1983

###### APPEARANCES OF COUNSEL

*Frederick D. Berkon* of counsel (*Richard B. Kelsky* with him on the brief; *Townley & Updike,* attorneys), for appellant and third-party plaintiff-appellant.

*Bernard Meyerson* of counsel (*Zipser, Zipser & Bernstein, P. C.,* attorneys), for respondent.

###### OPINION OF THE COURT

KASSAL, J.

Defendant, Trans Urban Construction Co., Inc. and Lasker-Goldman Corporation, a joint venture (Trans Urban), appeals from an order which denied its motion for

summary judgment dismissing the complaint. The action is brought by the New York Board of Fire Underwriters (Underwriters), representing eight designated insurance companies as subrogee of the State of New York, to recover against the defendants to the extent of payments previously made by the eight insurers after a windstorm loss during construction of the State Office Building in Harlem, New York City. Plaintiff alleges that the substantial windstorm damage on December 2, 1974, resulted from the negligence by the named defendants in their construction of the building. The legal issue tendered on appeal is whether a right of subrogation exists against appellant to sustain the sufficiency of the complaint for a recovery of the sums previously paid to it as a named additional insured under the insurance policies issued.

This action was commenced in 1976 to recover $200,689.78 for windstorm damage sustained while the building was under construction. Each of the eight insurance carriers had issued an all-risk policy which insured the State, as owner, and the general contractor and certain subcontractors, as named additional insureds. Appellant, Trans Urban, was the general contractor, responsible for the construction of the building. The remaining defendants include Samson Window Corporation, a subcontractor responsible for roofing work, Jenkins Electric Company, Inc., a prime electrical contractor, and the individual defendants, Percy Ifill, Conrad Johnson and George Hanchard, doing business as Ifill, Johnson & Hanchard, the architects. The complaint alleges that as a result of a windstorm, a loggia ceiling in the building collapsed, resulting in substantial property damage proximately caused by the negligence of the named defendants.

The contract entered into between the State, as owner, and Trans Urban, as general contractor, imposed the risk of loss upon the contractor and required it to repair and replace any damage occasioned during the construction of the project, without regard to fault. Section 126A of article 25A, amending the general conditions of the contract, provides:

"126A. RISK OF LOSS. The Contractor shall faithfully perform and complete all of the work required by the

Contract, assuming full responsibility for the following risks:

"(a) Loss or damage, direct or indirect, to the contract work including the buildings, structures, or any other construction in progress, or to any plant, equipment, tools, materials or property furnished, used, installed, or received by the State. The Contractor shall bear all such risk of loss or damage until all of the work covered by the Contract has been finally accepted by the State. In the event of such loss or damage, the Contractor shall forthwith repair, replace, and/or make good any such loss or damage without cost to the State."

"(b) Damage or injury of any kind or nature (including death resulting therefrom) to persons and/or property caused, directly or indirectly, by an occurrence arising out of, resulting from or in connection with (1) the performance by the Contractor of the work covered by the Contract or (2) the Contractor's operations, actions, omissions, or presence at or near the vicinity of the construction site."

The agreement obligated the owner to obtain all-risk insurance against physical damage to the property during construction, naming as an additional insured, *inter alia,* Trans Urban, as follows: "124A. BUILDERS RISK FIRE INSURANCE. From commencement of the work until final acceptance, the State shall procure and maintain, at its own expense, an All Risk Direct Physical Damage Property policy with coverages including, but not limited to, buildings in the course of construction and materials to be made a part of the work. The State, and the Contractor, as their interests may appear, will be named as the parties insured. The policy shall contain a provision that any loss shall be payable to the State on behalf of the insureds. The State shall, on behalf of the insureds, have power to adjust and settle with the insurer any loss or claim under such policy."

In accordance with its contractual obligation, the State secured eight all-risk policies, each of which named appellant and other designated contractors as additional assureds, in addition to the owner. Each policy afforded builders' risk coverage to the extent of the actual cash value of the property, but not in excess of the cost to repair

or replace the property, with extended coverage to include, *inter alia,* windstorm loss.

Subsequent to the windstorm damage sustained during the construction of the building, Trans Urban, fulfilling its contractual obligation, made the necessary repairs in conjunction with the other prime contractors and, thereafter, submitted claims to the eight insurers in the total sum of $214,601.87, representing appellant's cost for such repairs. Following negotiations with the insurance carriers, a settlement was arrived at in the amount of $154,431.50, with each of the insurance carriers paying its pro rata share of the total claim by checks payable to both the State of New York and appellant. The payments constituted an acknowledgement by each carrier that the policies afforded coverage for the windstorm loss at the construction site. The State, apparently recognizing that it suffered no loss since the repairs had been wholly borne by appellant and the other contractors, indorsed each of the checks, thereby transmitting full payment of the settlement to the prime contractors.

After the settlement, this action was instituted by Underwriters, allegedly representing the eight insurers as subrogee of the State to recover as against appellant the sums previously paid to it as an additional insured under the builders' risk insurance policies issued. The complaint, in three causes of action, asserts a right by the State to recover for the loss. Insofar as concerns appellant, the first, third and fourth causes of action, respectively purport to assert claims premised upon breach of contract, negligence and breach of warranty. Defendants, it is alleged, were negligent and careless in the construction of the building and failed to follow specifications, as a result of which the project was so improperly constructed that it did not withstand anticipated environmental conditions. This, in turn, caused a collapse of the roof, resulting in substantial property damage.

In moving for summary judgment dismissing the complaint, Trans Urban claimed that no right of subrogation existed, since the State, as subrogor, had suffered no loss, the cost of repairs having been fully assumed by the contractors, who had repaired the physical damage to the

building. At Special Term appellant argued that since Underwriters, as subrogee of the State, stood in the same position as the subrogor, with no greater rights, it could not maintain this action in the shoes of the State to recover as against the contractor for the very payments which it had received as an assured.

Underwriters placed principal reliance upon *Tishman Co. v Carney & Del Guidice* (34 NY2d 941) as authorizing subrogation against the contractors, albeit they were named as additional insureds in the policies. In claiming entitlement to subrogation, plaintiff here contended that the State did suffer a loss, evidenced by the fact that the insurers had issued their drafts payable to the State, in addition to the named contractors. Plaintiff also claimed that although Trans Urban was named as an additional insured in each of the policies, the insurance did not afford liability coverage to the prime contractors. Accordingly, it argued that the policies did not intend to insulate the contractors from liability for their own negligence.

We disagree with the conclusion reached by Special Term that there are factual issues here sufficient to preclude summary disposition. To the contrary, the facts are undisputed and the only issue is the legal conclusion as to whether a right of subrogation exists.

Upon payment of an existing debt by a party who is secondarily liable, the paying party is subrogated to the position of his principal and may proceed against a party primarily responsible. This right arises upon payment to the subrogor and, in general, may be created by contract or by operation of law. As an equitable doctrine in the context of insurance, an insurance carrier, upon payment of a loss, becomes subrogated to the rights and remedies of its assured to proceed against a party primarily liable without the necessity of any formal assignment or stipulation (31 NY Jur, Insurance, § 1620; 11 Appleman, Insurance Law and Practice, § 6501 *et seq.;* 16 Couch, Insurance 2d, § 61:46 *et seq.*). The right arises by operation of law out of the underlying relationship between the parties. Thus, in *National Sur. Co. v Trilby Realty Corp.* (249 App Div 566, 568) we recognized the equitable nature of the remedy under which "a surety who pays the principal's debt be-

comes subrogated to all the rights and remedies of the creditor." The right is coextensive with the amount of indemnity paid to the insured (6A Appleman, Insurance Law and Practice, § 4054).

It is a well-established principle of insurance law, however, that the right of subrogation exists only with respect to the rights of the insured against third persons and that there is no right of subrogation in favor of the insurer against its own insured (16 Couch, Insurance 2d, § 61:133; 6A Appleman, Insurance Law and Practice, § 4055; 2 Richards, Insurance [5th ed], § 185). Similarly, it has been generally recognized that there may be no right of subrogation against a party named as an additional assured in the policy (16 Couch, Insurance 2d, § 61:134). In *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.* (240 NY 37, 47) the Court of Appeals succinctly held: "It is so well settled as not to require discussion that an insurer who pays claims against the insured for damages caused by the default or wrongdoing of a third party is entitled to be subrogated to the rights which the insured would have had against such third party for its default or wrongdoing. This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries."

Nevertheless, there are limitations to the applicability of the doctrine and, as noted, one such restriction is the unavailability to the insurer of a right of subrogation as against its own assured. Recently, in *Chrysler Leasing Corp. v Public Administrator, N.Y. County* (85 AD2d 410) this court, per SANDLER, J., in a comprehensive opinion reviewed the leading cases and authorities on the issue and held that it was "firmly established that an insurance company may not be subrogated to the claim of one insured against another insured even where the amount sought to be recovered is in excess of the coverage provided" (85 AD2d, at p 416).

*Chrysler Leasing Corp. v Public Administrator, N.Y. County (supra)* involved the applicability of subrogation principles to automobile liability insurance. We are here concerned with the same principles insofar as they relate to builders' risk insurance. The central issue to be resolved is whether the insurer (or, as here, a party purporting to act on behalf of the insurer), may be subrogated as against a named additional insured on the policy (the general contractor), after the carrier had honored and paid a claim submitted by the insured. Under the facts of this case, we are in agreement that no right of subrogation exists in favor of the insurer as against appellant, its own insured.

Contrary to the position of respondent, *Tishman Co. v Carney & Del Guidice (supra)* is factually distinguishable from the situation here. In *Tishman,* the facts were found to justify the exceptional holding there, permitting the exercise of subrogation rights as against a party named as an additional insured. *Tishman* involved a subrogation action brought by the insurers following a loss occasioned by a fire in a building under construction. The fire allegedly resulted from the explosion of a drum of gasoline used by the plastering subcontractor. After the insurers had paid the loss, they brought the action in the name of their insured, the general contractor, to recover as against this subcontractor whose negligence was claimed to have caused the ignition of the gasoline drum. In moving for summary judgment dismissing the complaint, the subcontractor argued that subrogation was unavailable to the insurers since defendant was a named additional insured in the policy and, further, since the subcontractor had an insurable interest by reason of its obligation to indemnify plaintiff for any damage which may have resulted during the course of the work performed under the subcontract. The Court of Appeals, affirming our order denying the motion, found there was no insurable interest on the part of the subcontractor with respect to the property damaged in the fire. Thus, the court upheld the right of the insurers to proceed in subrogation, albeit against a subcontractor named as an additional insured in the policy, since under the facts of that case, it clearly appeared that the subcontractor had no property interest in the subject of the loss.

This is apparent from the memorandum of the Court of Appeals, holding: "defendant's insurable interest under the fire insurance policies here in question was limited to its property interest in the building under construction — i.e., the tools, labor and material furnished or owned by the defendant. Since no part of the damages alleged by the plaintiff in this litigation was for destruction of any property owned or furnished by the defendant, it cannot be said that the defendant was a coinsured under the terms of the policy with respect to the loss caused by the fire" (34 NY2d, at pp 942-943).

This case is factually distinguishable from *Tishman* (*supra*) in that, here, appellant not only had an insurable interest in the property the subject of the loss, but was also paid by the insurer, clearly in recognition that the policy afforded coverage for the loss. As a general proposition, a person has an insurable interest in property if he would stand to gain some advantage or profit by its continued existence, or if he would stand to suffer some loss or disadvantage by its destruction (*Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 31, affd 49 NY2d 924; see, also, 3 Couch, Insurance 2d, § 24:12 *et seq.*, 4 Appleman, Insurance Law and Practice, § 2123 *et seq.*). Section 148 of the Insurance Law further defines "insurable interest" as "any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage."

As applied to this case, the terms of the contract between appellant and the State, placing all risk of loss upon Trans Urban during construction and obligating the general contractor to repair or replace any damage at the construction site, without regard to fault, suffice to create in appellant an insurable interest in the preservation of the property which is the subject of the insurance. The distinguishing feature between the facts in our case and those in *Tishman* (*supra*), is that here, appellant actually made the repairs and incurred the costs therefor, following the loss, which were then submitted to the insurers by Trans Urban as an additional insured under the policies. Clearly, no loss resulted to the State, since the damage to the building was remedied by the contractors pursuant to their contractual

obligation to do so. It is undisputed on this record that the settlement drafts in payment of the claim, although payable to both named insureds, were negotiated by the State and made payable to appellant's order to cover the costs incurred in repairing the building. Once the repairs were made, there was no loss to the owner and no claim could have been pursued by the State as against its contractor.

Since the State, as the prime insured under the policy, had no right of action against appellant, a similar conclusion is mandated that no right of subrogation exists in favor of its insurers. The insurers, as subrogees, have no greater or different rights or remedies than those which exist in favor of their subrogor. Plaintiff, as the representative of these insurers, is similarly situated, with no greater right to proceed than that possessed by its principals. The payment made to appellant by the insurers, in recognition of the validity of the claims made under the policies, as a matter of law, precludes any action or proceeding in the nature of subrogation.

Accordingly, the order, Supreme Court, New York County (BLANGIARDO, J.), entered December 14, 1981, denying defendant's motion for summary judgment, should be reversed, on the law, with costs and disbursements, the motion granted and the first, third and fourth causes of action dismissed as against appellant, Trans Urban Construction Co., Inc. and Lasker-Goldman Corporation, a joint venture, with a severance directed as to the remaining defendants and with respect to the counterclaims interposed by appellant in its answer.

MURPHY, P. J., KUPFERMAN, SANDLER and SULLIVAN, JJ., concur.

Order, Supreme Court, New York County, entered on December 14, 1981, unanimously reversed, on the law, defendant's motion for summary judgment granted and the first, third and fourth causes of action dismissed as against appellant, Trans Urban Construction Co., Inc. and Lasker-Goldman Corporation, a joint venture, with a severance directed as to the remaining defendants and with respect to the counterclaim interposed by appellant in its answer.

Appellant shall recover of plaintiff-respondent $75 costs and disbursements of this appeal.