HARTFORD ACCIDENT & INDEMNITY CO., Respondent-Appellant, v CNA INSURANCE COMPANIES, Sued Herein as CNA INSURANCE, Appellant-Respondent, et al., Defendant.

First Department, February 23, 1984

**APPEARANCES OF COUNSEL**

*Irwin H. Haut* of counsel (*Morris, Duffy, Ivone & Jensen,* attorneys), for appellant-respondent.

*F. V. Mina, P. C.* (*Mona C. Engel* on the brief), for respondent-appellant.

**OPINION OF THE COURT**

KASSAL, J.

In this declaratory judgment action, Hartford Accident & Indemnity Co. (Hartford) seeks a declaration that CNA Insurance Companies (CNA) is obligated to share pro rata in an underlying settlement by Hartford of an action which had been brought to recover for the wrongful death of Paul Yenchick, a construction worker killed on a construction site on August 17, 1973. In January, 1975, Yenchick's widow brought suit against the owner and general contractor, who, in June, 1975, impleaded Samuel Schlosberg, Inc., the plumbing contractor, the employer of Yenchick, and Schectman Carpentry, Inc., a contractor.

Hartford had issued a "wrap-up" policy, which covered several contractors at the construction site, including Schectman. Accordingly, Hartford defended Schectman in that action and subsequently paid $200,000 in settlement thereof. Thereafter, on March 22, 1979, Hartford brought this action to recover from CNA one half of the settlement, since CNA had also insured Schectman during the same period under a general liability policy.

CNA alleges that it did not receive timely written notice of the accident, as is required by the policy provision directing that written notice be given "as soon as practicable". The first notice CNA received was in 1977, two years after the wrongful death action had been brought and almost four years after the accident, which the insurer claims was insufficient compliance with the condition precedent to coverage. Accordingly, CNA moved for summary judgment dismissing the complaint on that ground and Hartford cross-moved for the same relief in its favor, alleging that it had given notice as soon as it discovered the existence of the CNA policy.

In support of its claim that it acted diligently, Hartford states that it was unaware of the accident and the underlying action until June 6, 1975, when Schectman transmitted the third-party summons and complaint to Hartford. On June 13, 1975, Hartford wrote to ascertain from Schectman whether other insurance coverage existed. When no reply was received, on October 20, 1975, Hartford again wrote to its insured, with a copy to the broker. After a third letter on December 3, 1975 went unanswered, Hartford initiated an investigation, from which it was ascertained in March, 1977 that CNA provided concurrent liability coverage. On March 23, 1977, Hartford sent a mailgram to Schectman, the insurance broker and CNA and, the following day, served a subpoena on the insurer to produce any policies covering Schectman. Thereafter, CNA served a reservation of rights letter and disclaimed coverage on April 12, 1977.

In denying both motions, Special Term concluded that there were triable issues of fact dealing with whether the notice to CNA was timely and whether that insurer had properly disclaimed coverage. We disagree. The failure of

the insured to give timely written notice to CNA bars the action by Hartford for contribution. The only claim in favor of Hartford under the CNA policy is as equitable assignee or subrogee of its insured, Schectman. However, the insured's failure to satisfy the condition precedent to coverage likewise operates as a bar to one claiming rights through the insured.

In support of its request for declaratory judgment relief, Hartford made no claim to any direct benefit under the CNA policy, nor does it assert any right as third-party beneficiary. Clearly, Hartford is a "stranger" to the contract between CNA and Schectman and there is no proof that the parties intended to confer any benefit upon Hartford (see *Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 33-34, affd 49 NY2d 924; *Cerullo v Aetna Cas. & Sur. Co.*, 41 AD2d 1, 4).

Hartford's only right to proceed against CNA arises as a result of its settlement of the underlying action, as a result of which the insurer became equitably subrogated to the rights of the insured. A right of subrogation may be created conventionally by contract or may arise by operation of law out of the underlying relationship between the parties. An insurance carrier, upon payment of a loss, becomes equitably subrogated to the rights and remedies of its assured to proceed as against a party primarily liable (see *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.*, 240 NY 37, 47; *New York Bd. of Fire Underwriters v Trans Urban Constr. Co.*, 91 AD2d 115, cross-app withdrawn 59 NY2d 970; *Hartford Acc. & Ind. Co. v Michigan Mut. Ins. Co.*, 93 AD2d 337). An equitable assignee or subrogee, however, is vested with no greater or different right or remedy than that possessed by its subrogor (see *Medical Malpractice Ins. Assn. v Medical Liab. Mut. Ins. Co.*, 86 AD2d 476, 479-480; *New York Bd. of Fire Underwriters v Trans Urban Constr. Co., supra,* p 123). Where an insurer seeks to assert an equitable right of subrogation for pro rata contribution from a coinsurer, it is subject to any defense or claim of lack of coverage which may be raised against the assured. Upon this basis, in *Medical Malpractice Ins. Assn. v Medical Liab. Mut. Ins. Co. (supra)*, we affirmed the order dismissing the complaint, holding that Medical Malprac-

tice Insurance Association (MMIA), which had insured a State hospital and settled an action brought against the State in the Court of Claims, could not secure contribution from Medical Liability Mutual Insurance Company (MLMIC), the insurer of the individual physicians. Our determination was partially premised upon the fact that the State was not covered by the MLMIC policies and, therefore, had no right to which MMIA could be subrogated. Moreover, although the doctors were covered by MMIA as additional insureds, they were not parties to the underlying malpractice action and, accordingly, had had no legal obligation which could have been discharged by MMIA's settlement of that action. Thus, the absence of coverage operated to bar MMIA's claim for contribution. Similarly, in our case, a defense which would bar an action by the insured, precludes a claim for coverage by one who, as subrogee, stands in the shoes of the assured. The failure to give timely written notice of loss is such a defense.

The CNA policy requires that written notice be given by or on behalf of the insured "as soon as practicable". This is a standard policy provision, invariably found in liability policies, which requires that notice be given within a reasonable time under the circumstances (Insurance Law, § 167, subd 1, par [d]). The notice provision in the policy is a condition precedent to coverage and the failure to furnish timely written notice of an accident vitiates the contract, both as to the insured and to one injured or damaged by his acts, thus relieving the carrier from any obligation under the policy (*Deso v London & Lancashire Ind. Co.*, 3 NY2d 127; *Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, 31 NY2d 436; *Rushing v Commercial Cas. Ins. Co.*, 251 NY 302).

Where an excuse or explanation is offered for delay in furnishing notice, the reasonableness of the delay and the sufficiency of the excuse are matters to be determined at trial. However, where there is no excuse or mitigating factor, the issue poses a legal question for the court, and courts have found relatively short periods to be unreasonable as a matter of law (*Deso v London & Lancashire Ind. Co., supra* [51 days]; *Rushing v Commercial Cas. Ins. Co., supra* [22 days]; *Haas Tobacco Co. v American Fid. Co.*, 226 NY 343 [10 days]).

In the case of an injured party claiming benefits under a liability insurance policy, section 167 (subd 1, par [c]) of the Insurance Law affords him an independent right to give written notice of an accident, thereby freeing the injured person from dependence upon the diligence on the part of the assured. While injured accident victims must satisfy the notice provision as a condition to coverage, an injured person who proceeds in diligent fashion will not be charged vicariously with any delay by the assured (*Bazar v Great Amer. Ind. Co.*, 306 NY 481). In terms of time, notice by an injured claimant is not judged by the same standard as governs notice by the insured, since what is reasonably practicable for the insured is not necessarily reasonably practicable for the injured person (see *Lauritano v American Fid. Fire Ins. Co.*, 3 AD2d 564, 568, affd 4 NY2d 1028).

In our case, we find no merit to the claim by Hartford that, in judging the timeliness of its notice, the insurer is in a position analogous to that of an injured accident victim. The public policy considerations which prompted the enactment of section 167 (subd 1, par [c]) of the Insurance Law (L 1939, ch 882), designed to protect accident victims, do not apply here. The only entitlement to pro rata contribution from CNA arises by reason of Hartford's having settled the underlying action. However, as equitable assignee, it did not acquire a greater right or remedy than that existing in favor of its assured. Since the insured gave CNA no notice of the accident, the failure to comply with the condition precedent relieves the insurer from any liability under the policy, to the insured and, through it, to Hartford, as subrogee.

Accordingly, the order, Supreme Court, New York County (NORMAN RYP, J.), entered June 30, 1982, denying CNA's motion and Hartford's cross motion, should be modified, on the law, with costs and disbursements, to grant CNA's motion for summary judgment dismissing the complaint as against that defendant, and otherwise affirmed.

SULLIVAN, J. P., ROSS, CARRO and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on June 30, 1982, unanimously modified, on the law, to grant CNA Insurance Companies' motion for summary judgment dismissing the complaint as against said defendant-appel-

ant-respondent, and otherwise affirmed. Defendant-appellant-respondent shall recover of plaintiff-respondent-appellant $75 costs and disbursements of this appeal.