SMITH & WESSON, Appellant, v BIRMINGHAM FIRE INSURANCE COMPANY, Respondent.

First Department, January 20, 1987

## APPEARANCES OF COUNSEL

*Paul H. Murphy* of counsel *(Donovan, Maloof, Walsh & Repetto,* attorneys), for appellant.

*Michael S. Finz* of counsel *(Speyer & Perlberg,* attorneys), for respondent.

## OPINION OF THE COURT

ASCH, J.

Two cases of plaintiff's revolvers were lost in shipment to Finland in June 1976. In September of 1976, Airtrans Terminals, Inc. and Prime Transfer Corp., which had been involved in the shipment, filed proofs of loss as to these cases of revolvers under their liability insurance policy with Birmingham Fire Insurance Company, defendant herein. That policy provided $25,000 liability coverage for losses of goods arising while the goods were in the shipper's vehicle but further limited liability coverage to the evaluation stated in assured's bill of lading, shipping receipt or other written agreement. Believing that their liability to Smith & Wesson was limited to $50 per case under the terms of Airtrans' warehouse receipt, and with the insurer claiming its liability was also so limited, Airtrans and Prime Transfer settled their claim with their insurer, Birmingham, for $100, in October of 1976.

A year and a half later, in 1978, plaintiff commenced an action in the Supreme Court, New York County, against four entities including Airtrans and Prime Transfer, seeking the full value of the lost cases of revolvers. Defendants Airtrans and Prime Transfer impleaded their insurer, Birmingham, asserting that insurer had a duty to defend them. Birmingham moved for summary judgment dismissing the third-party complaint, contending that its obligations under its insurance policy with Airtrans and Prime Transfer had been completely satisfied by the 1976 settlement. Although plaintiff apparently was also served with the motion, it did not oppose dismissal of the third-party complaint, believing that it did not affect its interest. Special Term granted that motion.

Defendants Airtrans and Prime Transfer moved for partial summary judgment dismissing plaintiff Smith & Wesson's complaint against them, based upon the limitation of liability

clause in the warehouse receipt. However, Special Term searched the record and granted plaintiff summary judgment, finding a declaration of value of the shipment at $14,500, which rendered the limitation of the liability clause inapplicable. Accordingly, judgment in favor of Smith & Wesson in the amount of $18,735.60 (including interest, costs and disbursements) was entered against Airtrans and Prime Transfer. Smith & Wesson then commenced an action, in July of 1981, against Airtrans' and Prime Transfer's insurer, Birmingham, pursuant to Insurance Law § 167 (now § 3420).

In this latter action, Special Term denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment on the ground plaintiff had recovered moneys for the lost guns from its own insurer, Insurance Company of North America, and thus the action was, in fact, one in subrogation, contrary to the "apparent purpose of the Insurance Law".

This decision, unrelated to the issues raised herein, was erroneous. In the cases cited by Special Term, *New York Bd. of Fire Underwriters v Trans Urban Constr. Co.* (91 AD2d 115) and *Chrysler Leasing Corp. v Public Administrator, N. Y. County* (85 AD2d 410), this court dealt with variations of the general proposition that an insurer may not be subrogated against its own assured. Here, obviously overlooked by Special Term, plaintiff's insurer is proceeding as subrogee not against plaintiff, but against others insured by Birmingham, third persons to whom the plaintiff's insurer owes no duty. We, therefore, must deal with the issues left unresolved by Special Term.

Birmingham contends that in an action brought pursuant to Insurance Law § 3420 (formerly § 167), the judgment creditor stands in the shoes of the insured (here, Airtrans and Prime Transfer) and its rights are identical with and dependent upon insured's rights to recover on the insurance policy *(Holmes v Allstate Ins. Co.,* 33 AD2d 96, 98, and cases cited therein) and, thus, plaintiff and judgment creditor cannot recover here because of the insured's 1976 settlement.

The cases cited by defendant do hold that a judgment creditor is bound by the policy's limitation of liability and notice requirements. None of them, however, deal with the question of whether the judgment creditor is bound by the insured's settlement with its insurer. A settlement agreement between insurer and insured, made without the participation

of the injured third party, should not be given the broad effect of barring the third-party judgment creditor's rights. Such agreement might readily be collusively entered into between the insurer and its insured. *(Karan Knitwear v National Ben Franklin Ins. Co.,* 12 Misc 2d 93 [App Term, 1st Dept 1958].)

It is difficult to conceive of any reason why the insured shippers would settle claims for liability coverage for $100, since the amount received is negligible as opposed to the possibility that the injured third party would recover the full amount of its loss against them. This, in fact, did occur. In addition, the insurance here was not property insurance. The only loss the shippers suffered was the amount of damages they would owe to the owner of the shipment. Consequently, if a settlement is recognized as binding upon the nonparticipating injured third party, the insurer and insureds would have a strong incentive to settle, merely to limit the amount the injured third party could collect against the insurer. This would defeat the beneficial purposes of Insurance Law § 3420.

This rationale and result is supported by *Rushing v Commercial Cas. Ins. Co.* (251 NY 302) which involved both a private settlement agreement between an insurer and its insured and a claim by the insurer of the insured's breach of a term of the policy. There, the insured gave late notice of the injured third party's claim, and the insurer disclaimed. The insurer and its insured then settled their coverage dispute by agreeing that the insurer would be relieved of liability for any judgment in favor of the injured third party if the insurer defended the insured in the injured third party's action against the insured. The insurer proceeded to provide a defense but the insured lost to the injured third party, and when that judgment went unsatisfied, the injured third party sued the insured directly. As to the settlement between the insurer and its insured, relieving the insurer of liability under the policy upon providing its insured a defense, the court found it did not bind the injured third party's rights. Chief Judge Cardozo wrote of this third party: "She is not, indeed, affected by the compromise, which was unavailing to divest her of rights previously accrued." *(Rushing v Commercial Cas. Ins. Co., supra,* p 305.) As to the claimed breach of the term of the policy requiring prompt notice, the court found the injured third-party judgment creditor did stand in the insured's shoes and might be barred from recovery unless there was an explanation or excuse for the late notice. Here, of course, there is no claim of any breach of a term of the policy.

Birmingham further contends that Smith & Wesson is bound by the determination of the court in the prior action, that the insurer completely satisfied its obligations under the policy as a result of the settlement, even if that determination was erroneous. Although Smith & Wesson's decision not to oppose the insurer's motion to dismiss the third-party complaint in the prior action was understandable, since it did not appear to affect its rights at that time, it is clear that it could have opposed that motion and could have appealed the court's order dismissing the third-party action. Thus, the Court of Appeals has held that, in an action between an injured third party and insureds, the plaintiff injured party has standing to resist a motion by the insured's counsel, supplied by the insurer, to withdraw on the grounds of lack of coverage, precisely because of the interest plaintiff might have in the future in the form of a direct action against the insurer under Insurance Law § 167. *(Brothers v Burt,* 27 NY2d 905; *Monaghan v Meade,* 91 AD2d 1014, 1015.)* Thus, Smith & Wesson could have opposed Birmingham's motion to dismiss the third-party complaint, by which the insureds sought to compel their insurer to defend them. However, simply because Smith & Wesson could have resisted the motion is insufficient to preclude it in this later action, since the motion in the prior action sought relief solely against another party.

For the invocation of the doctrine of collateral estoppel, there are two requirements, the second of which is "a full and fair opportunity to contest the decision now said to be controlling". *(Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71.)* Since this doctrine is based upon "general notions of fairness" *(Gilberg v Barbieri,* 53 NY2d 285, 291), under the facts herein the order dismissing the third-party complaint in the prior action should not be given conclusive effect against plaintiff in this action. Moreover, the first requirement for the invocation of collateral estoppel, viz., an identity of issue which has necessarily been decided in the prior action and is decisive of the present action *(Schwartz v Public Administrator of County of Bronx, supra,* p 71), is lacking.

The issue before the court on the motion to dismiss the third-party action involved Birmingham's duty to defend its insureds. This, in turn, depended on whether the insureds were bound by their own settlement agreement with Birmingham. In the matter before us, the issue involved Birmingham's duty to indemnify the injured judgment creditor and

turns upon whether a nonparty to the settlement agreement is bound by its terms in an action commenced under Insurance Law § 167 (now § 3420). Therefore, both of the prerequisites to invoking the doctrine of collateral estoppel are not present herein.

Accordingly, the order of the Supreme Court, New York County (Norman C. Ryp, J.), entered May 10, 1985, which denied plaintiff's motion for summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint, should be reversed, on the law, the motion by plaintiff should be granted and the cross motion by defendant should be denied, with costs and disbursements payable by defendant.

SANDLER, J. P., CARRO and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on May 10, 1985, unanimously reversed, on the law, the motion by plaintiff granted and the cross motion by defendant denied. Plaintiff-appellant shall recover of defendant-respondent $75 costs and disbursements of this appeal.