MORRIS PARK CONTRACTING CORP., Respondent-Appellant, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant-Respondent. [822 NYS2d 616]—

In an action for a judgment declaring that the defendant must defend and indemnify the plaintiff in an underlying action entitled *Cabrera v Abatement Asbestos & Lead Specialists Corp.*, pending in the Supreme Court, Kings County, under index No. 29034/02, the defendant appeals, as limited by its brief, from so much of an order of the Supreme Court, Kings County (Kramer, J.), dated March 8, 2005, as denied its motion for summary judgment dismissing the complaint, and the plaintiff cross-appeals from so much of the same order as denied its cross motion for summary judgment declaring that the defendant is obligated to provide excess insurance coverage *to it in the* underlying action.

Ordered that the order is affirmed, without costs or disbursements.

Contractual obligations of an insured to provide notice of a claim to its liability insurer as soon as practicable and to promptly forward legal papers to the carrier serve as conditions precedent to coverage (*see White v City of New York,* 81 NY2d 955, 957 [1993]; *Steinberg v Hermitage Ins. Co.,* 26 AD3d 426, 427 [2006]; *New York Mut. Underwriters v Baumgartner,* 19 AD3d 1137, 1139 [2005]; *Steadfast Ins. Co. v Sentinel Real Estate Corp.,* 283 AD2d 44, 54 [2001]). Such provisions have been construed to require compliance within a reasonable time under all of the attendant circumstances (*see Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12, 19 [1979]; *Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.,* 31 NY2d 436, 441 [1972]; *Power Auth. of State of N.Y. v Westinghouse Elec. Corp.,* 117 AD2d 336, 339 [1986]; *Olin Corp. v Insurance Co. of N. Am.,* 743 F Supp 1044, 1053 [1990], *affd* 929 F2d 62 [1991]). Furthermore, notice requirements are to be liberally construed in favor of the insured (*see Greenburgh Eleven Union Free School Dist. v National Union Fire Ins. Co. of Pittsburgh, PA,* 304 AD2d 334, 335-336 [2003]; *General Elec. Capital Corp. v Royal Ins. Co. of Am.,* 205 AD2d 396 [1994]; *Yaccarino v St. Paul Fire & Mar. Ins. Co.,* 150 AD2d 771, 772 [1989]; *D. C. G. Trucking Corp. v Zurich Ins. Co.,* 81 AD2d 990, 991 [1981]), and " '[w]here an excuse or explanation is offered for delay in furnishing notice, the reasonableness of the delay and the sufficiency of the excuse are matters to be determined at trial' " (*Travelers Ins. Co. v Volmar Constr. Co.,* 300 AD2d 40, 42 [2002], quoting *Hartford Acc. & Indem. Co. v CNA Ins. Cos.,* 99 AD2d 310, 313 [1984]; *see Deso v London & Lancashire Indem. Co. of*

*Am.,* 3 NY2d 127, 129 [1957] ["the reasonableness of a delay . . . is usually for the jury"]; *C.C.R. Realty of Dutchess v New York Cent. Mut. Fire Ins. Co.,* 1 AD3d 304, 305 [2003] ["a failure to give notice may be excused when an insured has a reasonable belief of nonliability. The burden is on the insured to show the reasonableness of its belief, and whether that belief is reasonable is ordinarily a question for the trier of fact"] [citations omitted]; *City of Utica, N.Y. v Genesee Mgt., Inc.,* 934 F Supp 510, 520 [1996] ["the question of whether notice has been given within a reasonable time is ordinarily for the jury"]). Where, as in this case, notice to an excess liability carrier is in issue, the focus is on when the insured reasonably should have known that the claim against it would likely exhaust its primary insurance coverage and trigger its excess coverage, and whether any delay between acquiring that knowledge and giving notice to the excess carrier was reasonable under the circumstances (*see Reynolds Metal Co. v Aetna Cas. & Sur. Co.,* 259 AD2d 195, 201-203 [1999]; *Paramount Communications v Gibraltar Cas. Co.,* 204 AD2d 241, 241-242 [1994]; *Olin Corp. v Insurance Co. of N. Am.,* 743 F Supp 1044, 1054 [1990]). The resolution of such questions of reasonableness is "heavily dependent on the factual contexts in which they arise" (*Mighty Midgets v Centennial Ins. Co., supra* at 19).

Upon our consideration of the foregoing principles and all of the relevant circumstances presented, we conclude that, in response to the motion of the defendant excess insurer National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter National Union), for summary judgment, the plaintiff insured, Morris Park Contracting Corp. (hereinafter Morris Park), succeeded in raising triable questions of fact with regard to the timeliness of the notice it provided to National Union. The record demonstrates that Morris Park was served in the underlying personal injury action with a complaint dated July 22, 2002. As National Union and our dissenting colleague accurately observe, that complaint contained an ad damnum clause seeking $10,000,000 in damages, a figure far in excess of Morris Park's $1,000,000 in primary coverage. However, the complaint contained only vague and generalized allegations of injury without any particularity or substantiation. In view of the commonplace practice of exaggerating damages requests in personal injury actions, the ad damnum clause alone was not sufficient to require the giving of notice to National Union. Rather, it is the combination of the ad damnum figure and evidence regarding the seriousness of the injuries which triggers that obligation (*see e.g. Rekemeyer v State Farm Mut. Auto. Ins. Co.,* 7 AD3d 955, 957 [2004], *mod on other grounds* 4 NY3d 468 [2005];

*United States Liab. Ins. Co. v Winchester Fine Arts Servs., Inc.,*
337 F Supp 2d 435, 444-445 [2004]).

Following receipt of the complaint, Morris Park served an answer and discovery demands dated October 11, 2002. Morris Park avers that it thereafter actively investigated the claim by requesting information regarding the occurrence of the injured party's accident (of which Morris Park had no previous knowledge) and the nature and extent of his injuries. This ongoing investigation led to the service of a bill of particulars dated January 22, 2003 upon Morris Park, setting forth a lengthy list of serious injuries for which the injured party for the first time claimed Morris Park was legally responsible. It is undisputed that Morris Park notified National Union of the claim eight days later on January 30, 2003.

Notwithstanding the foregoing, both National Union and our dissenting colleague maintain that Morris Park was fully aware of the extent of the claimed injuries, and of the probability that its excess coverage policy with National Union would be implicated in the action by November 27, 2002, at the latest. On that date, Morris Park's counsel sent a report to the primary insurer listing various injuries and damages claimed by the injured party in a second supplemental bill of particulars served in a related action against several municipal defendants. However, while that report constitutes some evidence that Morris Park may have had sufficient information at that time to alert National Union to a possible excess coverage claim, we are unable to reach such a conclusion as a matter of law on this record. Indeed, the second supplemental bill of particulars upon which the report is based was served in a separate action and did not purport to attribute any fault or assert any claims for the specified injuries against Morris Park. Moreover, as previously noted, Morris Park presented evidence that it was actively engaged in a good faith investigation into the happening of the accident, the injuries that resulted therefrom, Morris Park's potential liability (if any) therefor, and even the injured worker's eligibility to recover some elements of the damages sought. Morris Park further averred that only when it was served with the bill of particulars dated January 22, 2003, asserting 42 additional injuries over and above those claimed against the municipal defendants in the related action, did it become reasonably clear that the excess coverage might be implicated in the action. Accordingly, Morris Park succeeded in raising issues of fact and credibility regarding whether any period of delay in notifying National Union of the claim was based on its initial reasonable, good faith belief that the excess insurance would

not be triggered in this case (*see generally Nails 21st Century Corp. v Colonial Coop. Ins. Co.,* 21 AD3d 1069 [2005]; *Reynolds Metal Co. v Aetna Cas. & Sur. Co., supra; Seemann v Sterling Ins. Co.,* 234 AD2d 672 [1996]; *G.L.G. Contr. Corp. v Aetna Cas. & Sur. Co.,* 215 AD2d 821 [1995]; *E.T. Nutrition v Central Mut. Ins. Co.,* 201 AD2d 451 [1994]).

In view of the foregoing, and upon consideration of all of the evidence presented, we find that a question also exists with regard to whether National Union's disclaimer, which was premised on the alleged late notice of the claim, was itself untimely (*see generally First Fin. Ins. Co. v Jetco Contr. Corp.,* 1 NY3d 64, 70 [2003]; *Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028, 1030 [1979]; *see e.g. Pawley Interior Contr., Inc. v Harleysville Ins. Cos.,* 11 AD3d 595, 596 [2004]; *M&N Mgt. Corp. v Nationwide Mut. Ins. Co.,* 307 AD2d 257, 258 [2003]; *Colonial Coop. Ins. Co. v Desert Storm Constr. Corp.,* 305 AD2d 363, 363-364 [2003]). Prudenti, P.J., Mastro and Spolzino, JJ., concur.

Dillon, J. (dissenting in part and concurring in part and voting to reverse the order insofar as appealed from and affirm the order insofar as cross-appealed from): While I agree with the majority that the plaintiff, Morris Park Contracting Corp. (hereinafter Morris Park), was not entitled to summary judgment, I believe that, pursuant to applicable case law, summary judgment should have been granted to the defendant, National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter National Union).

The majority panel affirms the denial of summary judgment to National Union on the ground that there is an issue of fact as to whether Morris Park had a good faith belief that the claim in the underlying action would not implicate excess insurance. However, the Supreme Court should have granted summary judgment in favor of National Union, and its failure to do so warrants reversal insofar as appealed from by National Union.

On August 31, 1999 Manual Cabrera was injured when he fell from a scaffold in the course of his employment at a construction site in Brooklyn. Cabrera commenced an action on or about July 22, 2002, in the Supreme Court, Kings County, entitled *Cabrera v Abatement Asbestos & Legal Specialists Corp.,* under index No. 29034/02, seeking damages from the defendants named therein for personal injuries as a result of their alleged negligence and violations of Labor Law §§ 200, 240, and § 241 (6). The ad damnum clause in Cabrera's complaint sought a judgment in the sum of $10,000,000.

One of the defendants named in the Cabrera action is Morris

Park, alleged to be the construction manager, general contractor, or prime contractor at the construction site. Cabrera's summons and verified complaint were served upon Morris Park on August 5, 2002 and an answer was interposed on Morris Park's behalf with affirmative defenses, cross claims, and discovery demands all dated October 11, 2002. Morris Park was insured for one million dollars by its primary general liability carrier, Investors Insurance Company (hereinafter Investors), and for an additional seven million dollars in excess coverage by National Union. Initially, Morris Park notified Investors, but not National Union, of Cabrera's suit. National Union received its first notice of Cabrera's suit by letter dated January 30, 2003, almost six months after service upon Morris Park of Cabrera's summons and complaint.

National Union disclaimed coverage on February 27, 2003 on two separate but related grounds; namely, untimely notice of the occurrence in alleged material breach of article VI F (2) of the policy conditions, and failure to immediately forward suit papers in alleged material breach of article VI F (3) (a) of the policy conditions. National Union's disclaimer letter dated February 27, 2003, which was sent approximately 3 1/2 weeks after it learned of Cabrera's lawsuit, was timely (*see Steinberg v Hermitage Ins. Co.,* 26 AD3d 426, 428 [2006]). As a result of the coverage disclaimer, Morris Park commenced the instant action seeking a judgment declaring that National Union is obligated to insure, defend and indemnify its excess insured in the underlying Cabrera action. The Supreme Court denied National Union's motion for summary judgment.

Morris Park maintains that it had no duty to notify its excess insurance carrier of Cabrera's claim until it knew, or should have known, that there was a reasonable possibility that the claim would trigger the excess insurer's coverage (*see Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.,* 31 NY2d 436, 441 [1972]; *875 Forest Ave. Corp. v Aetna Cas. & Sur. Co.,* 37 AD2d 11, 12-13 [1971], *affd* 30 NY2d 726 [1972]; *Reynolds Metal Co. v Aetna Cas. & Sur. Co.,* 259 AD2d 195, 199-200 [1999]) and that accordingly, its notice of the suit was timely. Morris Park specifically argues that it was not aware Cabrera's damages could exceed its primary coverage until receipt of Cabrera's bill of particulars dated January 22, 2003, wherein Cabrera itemized damages as, among other things, disc herniations at L4/5 and L5/S1, two disc surgeries, future surgery, projected rehabilitation expenses of between $1.5 and $1.9 million, and future lost wages of $2.5 million. Notice of the suit was transmitted to National Union eight days later in the correspondence dated

January 30, 2003. However, Morris Park's arguments in this regard are refuted by the record, and unavailing as a matter of law, for three separate but related reasons.

First, in order for Morris Park to argue that it believed, in good faith, that its excess policy would not be reached, it must establish that the timing of its notice to the excess carrier was a result of a deliberate determination to that effect (*see Long Is. Light. Co. v Allianz Underwriters Ins. Co.*, 24 AD3d 172, 173 [2005]). Here, the record is devoid of any evidence that Morris Park, despite receipt of a complaint with a $10 million ad damnum and relevant discovery materials in the fall of 2002, ever made any deliberate determination that National Union did not need to be notified of Cabrera's suit based upon an assessment that the excess insurance was not reasonably likely to be reached. For this reason, Morris Park's good faith argument is legally unavailing (*see Long Is. Light. Co. v Allianz Underwriters Ins. Co., supra*) and its burden of proof cannot be met on this record (*see Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742, 744 [2005]; *Modern Cont. Constr. Co., Inc. v Giarola*, 27 AD3d 431 [2006]).

Second, the record undeniably refutes Morris Park's assertion that it was unaware of the extent of Cabrera's damages until January 22, 2003. Cabrera had commenced in Supreme Court, Kings County, a separate personal injury action arising out of the same work site accident entitled *Cabrera v Board of Educ.* under index No. 12766/00. Cabrera served in that action a second supplemental verified bill of particulars dated September 18, 2002, setting forth the same itemization of physical injuries, surgeries, rehabilitation expenses, and lost wages as later set forth in the January 22, 2003 bill of particulars. Morris Park received a copy of the September 18, 2002 particulars some time in the fall of 2002, as its contents were specifically summarized by Morris Park's counsel in correspondence to Investors dated November 27, 2002. By that date, clearly, Morris Park not only knew that Cabrera's complaint contained an ad damnum clause nine million dollars in excess of Investor's primary coverage, but also, that Cabrera had itemized in verified form (*see* CPLR 3044) damages that exceeded the limit of the primary coverage by multiples. It could no longer believe in good faith, by November 27, 2002, that National Union's excess coverage was not involved in the suit (*see Rekemeyer v State Farm Mut. Auto. Ins. Co.*, 7 AD3d 955, 957 [2004] [large ad damnum and description of significant injuries provided knowledge, or reason to know, that timely notice was required to claim underinsured motorist benefits], *mod on other grounds* 4 NY3d 468 [2005]).

There is no question of fact as to Morris Park's awareness of the details and severity of Cabrera's damages claims, as its counsel's letter of November 27, 2002 constitutes the documentary "smoking gun" evidencing such awareness, and that the injuries claimed therein arose out of the same underlying workplace accident. Yet, while Morris Park deemed the damages itemized in the September 18, 2002 bill of particulars to be of sufficient importance to summarize to the primary carrier in the correspondence of November 27, 2002 notice of the suit to National Union continued to be withheld for almost nine additional weeks.

In this regard, the provisions of the excess policy are of importance. As the majority correctly notes, an insured's violation of notice requirements, without justification, constitutes a failure to comply with a condition precedent that vitiates the insurance contract (*see Great Canal Realty Corp. v Seneca Ins. Co., Inc., supra* at 743; *Argo Corp. v Greater N.Y. Mut. Ins. Co.,* 4 NY3d 332, 339 [2005]; *White v City of New York,* 81 NY2d 955, 957 [1993]). Article VI, paragraph F (2) of the policy provides that if a claim is made or a suit is brought against the insured that is "reasonably likely to involve this policy," the insured is contractually obligated to notify National Union of the claim or suit in writing "as soon as practicable." Article VI, paragraph F (3) (a) contains seemingly stricter language, that the insured "immediately" transmit to National Union copies of "any demands, notices, summonses or legal papers received in connection with the claim or suit." The parties disputed at oral argument whether paragraphs F (2) and (3) (a) are separate and independent obligations of the insured, as urged by National Union, or conflicting contractual provisions that create an ambiguity as to when the notice requirement is triggered and whether such notice must be "immediate" or "as soon as practicable," as argued by Morris Park. Giving Morris Park the benefit of all reasonable favorable inferences, it knew that its excess insurance was "involved" in the suit by November 27, 2002 at the latest, when Cabrera's claimed damages, far in excess of primary insurance coverage, were summarized to the primary carrier, and the obligation to notify National Union was then triggered if not "immediately" under article VI, paragraph F (3) (a), then at least "as soon as practicable" thereafter under article VI, paragraph F (2).

The third reason that summary judgment should have been granted to National Union involves a question that flows from the foregoing; namely, whether a delay of almost nine weeks in providing notice to an excess insurance carrier, measured from November 27, 2002, constitutes untimeliness as a matter of law.

The reasonableness of a delay in giving notice is ordinarily a question of fact for trial (*see Travelers Ins. Co. v Volmar Constr. Co.*, 300 AD2d 40, 42 [2002]), as correctly stated by the majority of the panel. However, where there is no excuse for the delay and mitigating considerations are absent, the issue of the timeliness of notice to an insurer may be disposed of as a matter of law (*see Power Auth. of State of N.Y. v Westinghouse Elec. Corp.*, 117 AD2d 336, 339-340 [1986]). Relatively short periods of unexcused delay under "as soon as practicable" circumstances have been found to be unreasonable as a matter of law (*see Deso v London & Lancashire Indem. Co. of Am.*, 3 NY2d 127 [1957] [51 days]; *Power Auth. of State of N.Y. v Westinghouse Elec. Corp., supra* [53 days]; *Steinberg v Hermitage Ins. Co.*, 26 AD3d 426 [2006] [57 days from awareness of incident]; *Sayed v Macari*, 296 AD2d 396 [2002] [nearly 3 months' delay]; *Safer v Government Empls. Ins. Co.*, 254 AD2d 344 [1998] [delay between one and two months from insured's receipt of process]; *Matter of Government Empls. Ins. Co. v Elman*, 40 AD2d 994 [1972] [29 days]; *Reina v United States Cas. Co.*, 228 App Div 108 [1930] [26 days]).

While "as soon as practicable" language has been held by the Court of Appeals to be elastic and not immediate, what is practicable must be examined in light of the facts and circumstances of the case at hand (*see Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 19 [1979]; *Deso v London & Lancashire Indem. Co. of Am., supra* at 129). Here, since Cabrera's extensive damages merited detailed discussion to Investors in the correspondence of November 27, 2002, then it certainly would have been "practicable" for Morris Park to notify National Union of the suit at or about the same time. Morris Park's delay in transmitting notice to its excess carrier until January 30, 2003, constitutes, under the peculiar circumstances of this case, a breach of not only the immediacy requirement of article VI F (3) (a) of the parties' excess insurance policy (*see Steadfast Ins. Co. v Sentinel Real Estate Corp.*, 283 AD2d 44, 54 [2001]), but also, the "as soon as practicable" requirement of article VI, paragraph F (2). A breach of either provision vitiates the coverage.

Morris Park argues that the need for notice is greater for a primary insurer than for an excess insurer, as excess carriers are only interested in those particular cases serious enough to involve the excess policy (*see Olin Corp. v Insurance Co. of N. Am.*, 743 F Supp 1044, 1054 [1990], *affd* 929 F2d 62 [1991]). This argument does not, however, obviate Morris Park's contractual obligation to provide notice to its excess insurer of

potential excess claims in accordance with the terms of the policy. The Southern District's language in *Olin Corp.* does not suggest that notice to an excess insurer can be delayed more than notice to a primary insurer, but only that the "trigger event" for excess notice is the knowledge of circumstances that a claim is reasonably likely to involve the excess coverage. Indeed, the Court of Appeals has specifically recognized "that excess carriers have the same vital interest in prompt notice as do primary insurers" (*American Home Assur. Co. v International Ins. Co.,* 90 NY2d 433, 443 [1997]), given their legitimate interests in monitoring the defense of the insured by primary counsel, conducting investigation, participating in settlement discussions, setting appropriate reserves, and in some instances, assuming the insured's defense upon its tender by the primary carrier. Accordingly, the timing of "immediate" or "as soon as practicable" notice measured from November 27, 2002 is the same for National Union as would be expected for initial corresponding notice to a primary insurer.

Morris Park's contentions regarding the inapplicability of provisions of the Labor Law are largely without merit insofar as the excess insurance issues are concerned. Likewise, Morris Park's contentions that National Union has not demonstrated prejudice from the timing of its notice are without merit, as prejudice need not be shown here to sustain a timely disclaimer of excess coverage based on untimely notice (*see Great Canal Realty Corp. v Seneca Ins. Co., Inc., supra* at 743; *Argo Corp. v Greater N.Y. Mut. Ins. Co., supra* at 340; *American Home Assur. Co. v International Ins. Co., supra* at 443; *319 McKibben St. Corp. v General Star Natl. Ins. Co.,* 245 AD2d 26, 28 [1997]).

For all of the foregoing reasons, I would grant National Union's motion for summary judgment on the ground that Morris Park breached its contractual obligation to provide timely notice, thereby vitiating the excess coverage.