■ JOHN AMBRA, Appellant, v JOSEPH P. AWAD et al., Defendants and Third-Party Plaintiffs-Respondents. JAMES FERETIC et al., Third-Party Defendants-Appellants. [879 NYS2d 160]—

In an action, inter alia, to recover damages for legal malpractice, the plaintiff appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County (Winslow, J.), entered September 20, 2007, as granted the motion of the defendants and third-party plaintiffs pursuant to CPLR 3211 (a) (1) and (7) to dismiss the second and third causes of action, and the third-party defendants separately appeal, as limited by their brief, from so much of the same order as denied that branch of their cross motion which was for summary judgment dismissing the third-party cause of action for contribution.

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the cross motion of the third-party defendants which was for summary judgment dismissing the third-party cause of action for contribution and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs to the defendants and third-party plaintiffs payable by the plaintiff.

In 1998 the plaintiff hired the law firm of Genser & Dubow (hereinafter G & D) to represent him in connection with a personal injury action against Makko of Brooklyn, Ltd. (hereinafter Makko). G & D filed a complaint on behalf of the plaintiff, listing the sum of one million dollars in the ad damnum clause. In January 1999 the plaintiff discharged G & D and retained

the law firm of Silberstein, Awad & Miklos, which employed the defendants third-party plaintiffs Joseph P. Awad and Gregory D. Bellantone (hereinafter collectively SA&M).

The third-party defendant Hawkins, Feretic, Daly & Maroney, P.C., which employed the third-party defendant James Feretic (hereinafter together HFD&M), represented Makko in connection with the plaintiff's personal injury action. There is no evidence in the record that HFD&M complied with preliminary conference orders directing it to provide SA&M with any information regarding excess insurance, and, in fact, Feretic testified that it was his policy not to provide excess insurance information if the amount in the ad damnum clause fell within the limits of a primary insurance policy. Bellantone nevertheless filed a note of issue and certificate of readiness. Prior to and during the liability trial, Bellantone did not seek to increase the amount in the ad damnum clause. He averred that, based on a 2001 letter from Feretic, it was his understanding that Makko had one million dollars in primary insurance coverage through Empire Insurance Co. (hereinafter Empire).

On April 4, 2002, the jury returned a verdict against Makko with respect to liability. In an affidavit, Feretic stated that, on the same day, he had a conversation with a Makko employee regarding excess insurance. On April 9, 2002, after both sides rested their cases on damages, Bellantone made an oral application to increase the amount of the ad damnum clause from one million dollars to five million dollars, which was denied. The jury rendered its damages verdict on April 10, 2002, awarding approximately two million dollars to the plaintiff.

On April 15, 2002, Makko's excess insurer, with whom Makko had a five million dollar policy, disclaimed coverage based on late notice. The excess insurer stated that it first learned of the personal injury action on April 9, 2002, $3^1/_2$ years after the plaintiff filed suit. At that point, HFD&M no longer represented Makko. Makko's new counsel forwarded the disclaimer letter to SA&M. SA&M then made a written motion to increase the ad damnum amount to $2,020,000. The plaintiff settled the case with Makko for one million dollars before that motion was decided.

In his amended complaint against SA&M, the plaintiff alleges four causes of action: SA&M negligently and incorrectly told him that Makko lacked sufficient assets to pay the full jury verdict; SA&M should have moved to increase the ad damnum prior to trial, but negligently failed to do so, so the plaintiff was required "to settle his claim for less than fifty percent of the amount of the jury award"; SA&M's failure to file an appropri-

ate motion to increase the ad damnum resulted in a one million dollar cap on the plaintiff's recovery and the loss of Makko's excess insurance coverage; and SA&M coerced him into accepting Makko's one million dollar settlement offer. SA&M then impleaded HFD&M, alleging that it violated Judiciary Law § 487 and fraudulently concealed from SA&M the fact that Makko had excess insurance coverage, and that SA&M was entitled to both indemnification and contribution.

SA&M moved to dismiss the plaintiff's second and third causes of action, while HFD&M moved to dismiss the third-party complaint in its entirety. The Supreme Court granted SA&M's motion, and awarded summary judgment to the third-party defendants dismissing all causes of action in the third-party complaint with the exception of contribution. Both the plaintiff and HFD&M appeal.

The Supreme Court properly dismissed the plaintiff's third cause of action to the extent that it related to excess insurance. Although the plaintiff alleged therein that SA&M's failure to increase the ad damnum amount resulted in the loss of Makko's excess insurance coverage, the terms of the excess policy reveal that the ad damnum clause in the plaintiff's 1998 complaint had no bearing on Makko's duty to notify the excess insurer.

Typically, where "notice to an excess liability carrier is in issue, the focus is on when the insured reasonably should have known that the claim against it would likely exhaust its primary insurance coverage and trigger its excess coverage, and whether any delay between acquiring that knowledge and giving notice to the excess carrier was reasonable under the circumstances" (*Morris Park Contr. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 33 AD3d 763, 765 [2006]).

Pursuant to the terms of Makko's excess insurance policy, however, Makko was obligated to notify the insurer of *any* claim involving a scheduled underlying policy as soon as possible. Based on the policy's clear and unambiguous language (*see Marshall v Tower Ins. Co. of N.Y.,* 44 AD3d 1014, 1015 [2007]; *Physicians' Reciprocal Insurers v Jordan,* 40 AD3d 723, 724 [2007]), Makko was required to inform the excess insurer of the plaintiff's claim as soon as possible, regardless of the amount provided in the ad damnum clause. Notification would have been untimely as a matter of law even before the plaintiff hired SA&M in 1999, since Makko knew about the plaintiff's suit by the summer of 1998 at the latest (*see e.g. Steinberg v Hermitage Ins. Co.,* 26 AD3d 426, 427 [2006]). Accordingly, the plaintiff cannot link SA&M's failure to increase the ad damnum amount to the loss of excess insurance coverage.

Dismissal of the second cause of action, as well as the remaining portion of the third cause of action, was also warranted, albeit for reasons other than those articulated by the Supreme Court. The plaintiff cannot establish that Bellantone's failure to file a pretrial motion to increase the ad damnum amount resulted in a one million dollar cap on his recovery and forced him to settle with Makko under unfavorable terms. Due to a supplemental bill of particulars filed in October 2001, HFD&M was aware long before trial that the plaintiff's damages could far exceed the one million dollar amount in the ad damnum clause. Under the peculiar circumstances of this case, Makko would not have been prejudiced by a posttrial increase in the ad damnum amount, so SA&M's posttrial motion to increase the ad damnum amount would likely have been granted if the case had not settled before the motion could be decided (*see Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23 [1981]).

The Supreme Court erred, however, in denying that branch of HFD&M's motion which was for summary judgment dismissing SA&M's contribution cause of action. Although the court correctly noted that issues of fact exist as to what Feretic knew about the excess insurance policy and when he knew it, these issues are not relevant to the question of whether contribution is warranted. Nothing in the record suggests that HFD&M's actions caused or exacerbated in part the injuries alleged in the plaintiff's remaining causes of action (*see Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 71 NY2d 599, 603 [1988]; *Richardson v Lindenbaum & Young*, 56 AD3d 645, 646-647 [2008]).

The parties' remaining contentions either are without merit or need not be reached in light of the foregoing determinations. Rivera, J.P., Balkin, Leventhal and Lott, JJ., concur. [*See* 16 Misc 3d 1128(A), 2007 NY Slip Op 51625(U).]